Henry A. COLEMAN, Delma A. Coleman, John Coleman, Ada Mae Coleman, a minor, John Coleman, a minor, and Larry Joe Coleman, a minor, Henry A. Coleman, being the next friend and father of all minors, Appellants (Plaintiffs below),

v.

Dean ALEXANDER and the Otto Lumber Company, Inc., a Wyoming corporation, Appellees (Defendants below).

No. 3086.

Supreme Court of Wyoming.

Aug. 20, 1963.

Robert W. Costin, of Davis & Costin, Laramie, for appellant.

John F. Sullivan, Laramie, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

This case comes to us on appeal from a judgment in favor of the defendants and against the plaintiffs. The action is the outgrowth of a collision on a winding mountain road between a truck and an automobile in which the plaintiffs were riding. Appellants claim the judgment was contrary to the evidence.

A careful examination of the evidence favorable to the defendants convinces that it is substantial and sufficient to support the judgment rendered. The judgment of the lower court is affirmed.

Affirmed.

Katherine CROUSE, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 3131.

Supreme Court of Wyoming.

July 23, 1963.

Jones & Dumbrill, Newcastle, Hayes & Richards, Deadwood, S. D., for appellant.

Norman B. Gray, former Atty. Gen., W. M. Haight, former Deputy Atty. Gen., Dean W. Brothwick, present Deputy Atty. Gen., Cheyenne, and Cecil K. Hughes, County and Prosecuting Atty., Crook County, for appellee.

Before PARKER, C. J., and HARNSBERGER and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

An information in three counts was filed in the district court within 30 days of the first day of the term, charging that defendant did "unlawfully receive, conceal or aid in the concealment of the following described personal property of the value of $25.00," describing it, "knowing the same to have been stolen by Gerald Cookston and Elbert Evans." Thereupon a bench warrant issued for defendant's arrest, and defendant filed motion to quash both the information and the warrant, and filed as well a motion for change of venue. Both motions were denied.

During that term, defendant was tried by a jury, convicted, and sentenced on the first and third counts of the information, after her further motion for directed verdict had been sustained as to the second count, but denied as to the first and third counts.

Defendant appeals, contending the denial of her motions constituted error; that introduction of certain evidence was prejudicial error; that certain instructions were erroneously given and refused; and that costs of prosecution were improperly assessed. These complaints will be considered in the order stated.

The motion to quash attacked the sufficiency of the information to justify issuance of the warrant. Although the information charged defendant in the words of the statute, § 6–135, W.S.1957, and the county and prosecuting attorney signed and positively verified it, appellant insists the information was insufficient for the issuance of an arrest warrant because the prosecuting attorney could not have had any direct or personal knowledge of the facts and because no details were given showing probable cause, the information merely stating conclusions based on hearsay. This amounts to claiming that speculation may be indulged in to negate the validity of statements positively sworn to upon the solemn oath of an officer, and that evidence showing probable cause must be detailed in the information before an arrest warrant may be granted by the district court.

In consequence, appellant contends there has been such violation of Article 1, Section 4, of the Wyoming Constitution, which is almost identical with Amendment IV of the Constitution of the United States, as only the word "affidavit" has been substituted for the words "Oath or affirmation," as requires reversal. Article 1, Section 4, of Wyoming's Constitution is as follows:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized."

There is no merit in the speculative theory. Courts which disagree with appellant include Moss v. State, 4 Okl.Cr. 247, 111 P. 950, 953, saying:

> "* * * where the information is verified in positive terms as true, it constitutes a showing of probable cause, even though it may subsequently develop that the affiant had no personal knowledge of the facts alleged. * * * The verification supports the information as the testimony taken before the grand jury supports an indictment. * * *"

Minn v. State, 5 Okl.Cr. 245, 114 P. 272, 273, overruled a motion to set aside the information on the ground that the person verifying it did not have positive knowledge of the acts set forth in the information; State v. Taylor, 75 Kan. 417, 89 P. 672, 673, said, " 'We are unable to perceive any good reason why a county attorney may not, if he feels warranted in so doing, verify an information * * * positively, and why such information, so verified, is not sufficient.' * * *" Additionally, the propriety of a prosecuting attorney's verifying an information positively has been noticed in State v. Miller, 95 Kan. 310, 147 P. 844; Phelps v. State, 36 Okl.Cr. 213, 253 P. 910; and this is true even though the prosecuting attorney bases his verification on information obtained from others. State v. Taylor, supra, followed in State v. Taylor, 75 Kan. 858, 89 P. 675. See 42 C.J.S. Indictments and Informations § 86c, p. 951, and, at p. 952: "An information verified in positive terms cannot be attacked on the ground that affiant in fact had no personal knowledge of the matters verified, even when the information is the basis for the issuance of a warrant of arrest," citing Moss v. State, supra.

▆▆▆▆ Section 7–122, W.S.1957, sets forth not only the form of the information but also the verification to be used and this form was followed in the instant case. Except that it may not qualify or amend constitutional requirements, the right to prescribe the form of information and verification is said to be within legislative province. See 42 C.J.S. Indictments and Informations, § 90b, p. 960, and authorities there cited. In State v. Tobin, 31 Wyo. 355, 367, 226 P. 681, 684–685, as well as in other Wyoming decisions, it is held that a criminal information in the words of the statute is sufficient. See also 42 C.J.S. Indictments and Informations § 139c, pp. 1037–1039. Additionally, 42 C.J.S. Indictments and Informations § 115, p. 996, points out that only ultimate facts need be averred in an information and that matters of evidence as distinguished from facts essential to the description of the offense need not be averred, citing a number of state as well as federal authorities. In the same volume of 42 C.J.S. Indictments and Informations § 139e, at page 1041, the matter is amplified with the statement, "Particulars as to manner or means, place or circumstance, need not in general be added to the statutory definition," citing cases from California, Missouri, and Oregon in support. These decisions and authorities comport with the purpose of an information which, as stated in 42 C.J.S. Indictments and Informations § 90a, pp. 959–960, requires "such certainty in the statement of the accusation as will identify the offense with which accused is sought to be charged, protect accused from being twice put in jeopardy for the same offense, enable accused to prepare for trial, and enable the court, on conviction, to pronounce sentence according to the right of the case" and also points out that "no greater particularity of allegation than may be of service to accused in understanding the charge and preparing his defense is required. * * * and it is not necessary to allege matters in the nature of evidence, or to set out the means by which the crime is accomplished, unless the act is one which may be criminal or otherwise, according to the circumstances under which it is done."

▆▆▆▆ It is sufficiently clear that the positively verified information in this case set forth ultimate facts which constituted a crime under the laws of this State when it

charged that appellant unlawfully received the described goods; that they were of a certain value; and that they had been stolen by named persons, the appellant knowing the goods had been so stolen.

Appellant feels Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed. 2d 1503, is in parallel and should control here, as the right to issue arrest warrant upon a positively verified information, which does not contain a detailed recitation of such facts or themselves show probable cause, has never before been challenged in this State.

Giordenello held that contraband seized without a search warrant should be suppressed unless taken as an incident to a legal arrest; that Rules 3 and 4 of the Federal Rules of Criminal Procedure must be read in the light of the Fourth Amendment to the Federal Constitution; that the Fourth Amendment applies to arrest warrants as well as to search warrants; and that the protection afforded by the Rules, viewed against constitutional background, requires inferences from facts, leading to the complaint, must be drawn by a neutral and detached magistrate instead of by an officer engaged in ferreting out crime.

There is considerable to distinguish Giordenello from the present case. To start with, the issue there was the suppression of contraband evidence seized incident to an arrest. Therefore, as the arrest was made upon a warrant issued without probable cause, the admissibility of the contraband depended upon the legality of the warrant. Here the issue is whether a verdict and judgment of conviction should be set aside, and the defendant's guilt or innocence does not depend upon the legality of the warrant issued, but upon whether she had a fair trial. On the other hand, the fairness of Giordenello's trial depended upon the admissibility of the challenged evidence. The manner of defendant's apprehension had nothing to do with her guilt or innocence. The illegality of an arrest warrant only affects the lawfulness of the taking

into custody; it does not affect the question of guilt or innocence. In consequence, unless an unlawful apprehension is held to deprive a trial court of jurisdiction to try and convict for a criminal offense, any irregularity or insufficiency in the issuance of the arrest warrant will not do so. People v. Smith, 36 Misc.2d 889, 233 N.Y.S.2d 164, 165, said, "In a criminal proceeding, how the defendant came or was brought into court is relatively unimportant," and held jurisdiction was acquired regardless of the legality of arrest.

People ex rel. Hein v. Ramsden, 36 Misc. 2d 345, 232 N.Y.S.2d 633, 634, held even if due process was not observed in procuring accused's extradition, the state was not barred from prosecuting accused.

People v. Mitchell, 209 Cal.App.2d 312, 26 Cal.Rptr. 89, 93, said even if extradition was improper that did not impair jurisdiction nor require reversal of a judgment of conviction.

Brown v. Maxwell, 174 Ohio St. 29, 186 N.E.2d 612, 613, said the validity of a defendant's conviction is dependent upon jurisdiction of trial court and does not depend upon validity of process by which accused is taken into custody.

United States v. Lawrenson, D.C.Md., 210 F.Supp. 422, 427, noting there was an indictment valid on its face, that a bench warrant issued thereon, and accused had a full and fair trial, held there was no merit in the claim an illegal arrest would vitiate the entire subsequent legal proceeding because the court was deprived of jurisdiction. Furthermore, our court has spoken somewhat conclusively on this matter in Kingen v. Kelley, 3 Wyo. 566, 570, 28 P. 36, 37, 15 L.R.A. 177, saying:

" * * * By no stretch of the imagination can it be conceived that the arrest of a defendant in a criminal action without a legal warrant, or his abduction by force and against his will from a neighboring state, could affect the general jurisdiction of the district court to try cases of grand larceny, or

to pronounce judgment on convictions therefor, imposing the legal penalties. * * * "

See also Commonwealth v. Gorman, 288 Mass. 294, 192 N.E. 618, 96 A.L.R. 977, and Annotation, 96 A.L.R. 982; 14 Am.Jur., Criminal Law, § 219, pp. 920–921.

■ 16A C.J.S. Constitutional Law § 581, p. 631, states, "the presence in the trial court of jurisdiction of the person and of the offense satisfies the constitutional requirement of due process" (United States ex rel. Rogalski v. Jackson, D.C.N.Y., 58 F.Supp. 218, affirmed 2 Cir., 146 F.2d 251, certiorari denied 324 U.S. 873, 65 S.Ct. 1011, 89 L.Ed. 1427), and "it is not a denial of due process of law to require one who has been returned from another state by force and without the formality of extradition procedure to face criminal charges in the state to which he is returned," citing numerous federal as well as state authorities.

■ While the right of a person to a speedy trial under the provisions of the Sixth Amendment to the Federal Constitution must of course be observed, the legislatures of the several states are not deprived of the right to adopt procedures which do not unreasonably contravene the amendment and we cannot say that § 7–124 violates the amendment by permitting the county and prosecuting attorney, within 30 days from the first day of a term, to file an information which would support the issuance of a valid arrest warrant and the taking of the accused into custody when that same statute also requires that the accused must be given a trial at the same term of court in which the information was filed. See 14 Am.Jur., Criminal Law, § 135, p. 859. Although it is usual and customary and, in fact, legislatively required under usual procedure that an accused be granted a preliminary examination before being required to stand trial, such a preliminary examination is not necessary in order to accord with due process of law. 16A C.J.S. Constitutional Law § 585, p. 637, says, "Due process of law is not denied by a statute or constitutional amendment providing for the

accusation and trial of accused persons without a preliminary examination," citing Penton v. State, 194 Ark. 503, 109 S.W.2d 131, and People v. McCrea, 303 Mich. 213, 6 N.W.2d 489, 503, certiorari denied 318 U.S. 783, 63 S.Ct. 851, 87 L.Ed. 1150.

■ Another important difference in Giordenello is that there the complaint and affidavit upon which the search warant issued was made by a federal agent whose duty was to discover crime. This is indicated by the Court saying, 357 U.S. at 486, 78 S.Ct. at 1250:

"* * * The protection afforded by these Rules, when they are viewed against their constitutional background, is that the inferences from the facts which lead to the complaint ' * * * be drawn by a neutral and detached magistrate instead of being judged by. the officer engaged in the often competitive enterprise of ferreting out crime.' * * * "

In the instant matter, the information was filed by a county and prosecuting attorney who was expressly authorized by statute to do so at certain periods of the year. A duty of the county and prosecuting attorney in this State is to represent the State in the conduct of the trial of offenders against our law. But he is not a peace officer nor is he an agent "engaged in the often competitive enterprise of ferreting out crime." It would seem to be within legislative prerogative to add to the duties of county and prosecuting attorneys by vesting in them the right and duty to exercise judgment and to clothe them with authority to draw inferences from matters and facts brought to their attention which may lead to such a firm conviction of probable cause that they are willing to swear upon their solemn oaths that the same are true. The very oath of office by which such attorneys qualify for the office they hold binds them to support, obey, and defend both state and federal constitutions. This contemplates that they will protect the rights of the innocent as well as prosecute the guilty, for that is the law of the land. It is pre-

sumed that the officer in this case performed his duty and this presumption controls until the contrary is made to appear. Under the law and procedure legislatively prescribed in this State, county and prosecuting attorneys are, for short periods of the year, given a comparable judicial function to that normally exercised by justices of the peace, and, when so exercised, the conclusions of the county and prosecuting attorney voiced under his positive oath are entitled to at least the same validity and respect as that of any magistrate.

■ Appellant also finds comfort in United States v. Dolan, D.C.Conn., 113 F.Supp. 757, 761, in which it is stated:

" * * * In our system of criminal administration he [the United States Commissioner] is often the first judicial officer responsible for the enforcement of the Fourth Amendment prohibiting the issuance of warrants 'but upon probable cause, supported by Oath or affirmation'. In the discharge of this high responsibility he is required to reject a complaint and refuse a warrant of arrest unless satisfied that there is probable cause therefor."

This statement however was made only after the court pointed out, 113 F.Supp. at 761, that the "Commissioner's Manual," prepared by a Committee of the Judicial Conference and revised by the Director of the Administrative Office, U. S. Courts, to incorporate changes necessitated by adoption of the Federal Rules of Criminal Procedure, provided:

" 'The complaint is not necessarily filed on the mere request or suggestion of an investigating officer or other person. On the contrary, the commissioner should always examine on oath the person making the complaint as well as any witness who may appear before him. The commissioner should reduce the complaint to writing and require it to be dated, signed, and sworn to by at least one complainant and filed with him. * * *

" 'The procedure and prerequisites for issuance of a warrant of arrest by a commissioner *are governed by Rule 4 of the Rules of Criminal Procedure.* Since the complaint is the foundation for issuance of the warrant the commissioner should assure himself that the complaint shows probable cause for belief that a crime was committed and that the persons for whom the warrant is sought committed it.' " (Emphasis supplied.)

It is thus plain the Dolan statement as to the prerequisites for issuance of warrants rested primarily on the Federal Rules of Criminal Procedure respecting the manner in which the Fourth Amendment should be observed. It merits attention that notwithstanding Dolan criticizes any assumption that there was probable cause only because the information was positively verified (113 F.Supp. 761), that court proceeds, itself, to assume that the commissioner had found probable cause merely because a warrant had been issued (113 F.Supp. 762). From this fact we might, if necessary, feel justified in assuming the county and prosecuting attorney had also found probable cause because of his verified information.

It might be well to note at this point that the manner in which criminal actions in this State are commonly instituted is set forth in different statutes. Section 7–160, W.S.1957, provides:

"Whenever a complaint in writing and upon oath, signed by the complainant, shall be filed with the justice, charging any person with the commission of any offense, it shall be the duty of such justice to issue a warrant for the arrest of the person accused, *if he shall have reasonable grounds to believe that the offense charged has been committed."* (Emphasis supplied.)

Additionally, § 7–410, W.S.1957, provides:

"Criminal actions for the commission of a public offense may be commenced before a justice of the peace by an information subscribed and sworn to, and filed with the justice."

Section 7–411, W.S.1957, specifies the contents of an information:

"Such information must contain:

"First—The name of the county and of the justice where the information is filed.

"Second—The names of the parties, if the defendants be known, and if not, then such names as may be given by the complainant.

"Third—A statement of the facts constituting the offense, in ordinary and concise language, and the time and place of the commission of the offense, as near as may be.";

with § 7–412, W.S.1957, providing its form:

"The information may be substantially in the following form:

"State of Wyoming, ⎫
 ⎬ ss.
"County of .......... ⎭

"The State of Wyoming

vs.

"A. B., Defendant

"Before Justice (here insert name of the justice.)

"The defendant is accused of the crime or offense. For that the defendant on the .......... day of .........., A.D. .........., at the (here name the city and township) in the county aforesaid, (here state the act or omission constituting the offense as in an indictment)."

Section 7–413, W.S.1957, in different language but with substantially the same import as § 7–160, sets forth the action to be taken by the magistrate upon the filing of the information:

"Immediately upon the filing of such information, the justice may, in his discretion, issue a warrant for the arrest of the defendant, directed in the same manner as a warrant of arrest upon a preliminary examination and may be served [in] like manner."

Although, from the above quoted statutes, it appears the legislature has interchangeably used the words "complaint" and "information" it seems from these statutes that the usual procedure for commencing a criminal action is substantially the same as federal procedure under federal rules.

But the proceeding we are called to pass upon is not where a warrant issues by a magistrate upon sworn complaint or information. It is where a warrant issues upon order of a court of record upon a prosecuting attorney's positively verified information, couched in the words of a criminal statute, naming the acts constituting a crime. This case must, therefore, be considered in the light of § 7–124, W.S.1957, as follows:

"No information shall be filed against any person, for any felony until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace or other examining magistrate or officer, and shall have been held for trial by such court or officer, unless such person shall have waived his right to such examination; provided, however, that the information may be filed without such examination against fugitives from justice; and provided, also, that whenever an offense shall be charged against any person, at any time within thirty days immediately preceding the first day of a regular term of court of the county wherein such offense is charged to have been committed, or within thirty days immediately following the first day of such regular term of court, provided such court shall continue in session for such period, then and in either of such cases, information may be filed without such examination; but in cases last named, the accused shall have the right to a trial at such term of court; provided, that if the defendant shall not be tried at such term of the district court, for

the reason that the case is continued upon the application of the prosecution, the defendant shall be entitled to an immediate examination before a committing magistrate."

And § 7–122, W.S.1957, sets forth another form of information with positive verification:

"The State of Wyoming, ⎱
"County of ........... ⎰ ss.

"In the district court for said county.

### "INFORMATION

"Comes now ......, county and prosecuting attorney of the County of ......, in the State of Wyoming, and in the name and by the authority of the State of Wyoming, informs the court and gives the court to understand that ...... late of the county aforesaid on the ...... day of ......, A. D. ......, at the County of ...... in the State of Wyoming, did (here state the act or omission constituting the crime or offense as in an indictment) contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming.

..................

"County and prosecuting attorney of the county of ...... in the State of Wyoming.

"When the verification of any information shall be made by the county and prosecuting attorney, it may be made substantially in the following form, which shall be sufficient, to-wit:

"The State of Wyoming, ⎱
"County of ........ ⎰ ss.

"I, ......, county and prosecuting attorney of the county of ......, in the State of Wyoming, do solemnly swear that I have read the above and foregoing information by me subscribed, that I know the contents thereof and that the facts therein stated are true (or that I have been reliably informed and

verily believe the facts therein stated to be true). So help me God.

"Sworn to before me and signed in my presence this ...... day of ...... A. D. ......, and I do hereby so certify.

..................................

"(Signature and official title of officer administering the oath.)

"The same form so far as applicable may be used where the information shall be sworn to or verified by the complainant or prosecuting witness or some other person; but in every such case, the person verifying the information shall swear that the facts therein stated are true."

Although appellant believes her exact point here has never been before this court, the early case of State v. Sureties of Krohne, 4 Wyo. 347, 34 P. 3, decided when §§ 7 and 8, ch. 59, S.L. of Wyoming, 1890–1891, were in force, furnishes a valuable guidepost. The law then authorized county and prosecuting attorneys to file informations in felony cases without there having been a preliminary examination, "whenever the county and prosecuting attorney is satisfied that a crime or offense has been committed in his county." In deciding Krohne, this court, while criticizing the broad power thus given county and prosecuting attorneys, expressly held the law was constitutional and not void. Chapter 21, S.L. of Wyoming, 1893, amended and re-enacted § 7 of ch. 59, S.L. of Wyoming, 1890–1891, and repealed § 8 thereof, although the re-enactment of § 7 retained the prosecuting attorney's right to file information without preliminary examination against a fugitive from justice. Chapter 123, S.L. of Wyoming, 1895, which was an entirely new act, repealed § 7 of ch. 59, S.L. of Wyoming, 1890–1891, and again repealed § 8 of the same chapter as well as repealing ch. 21, S.L. of Wyoming, 1893, and enacted what are now §§ 7–118 to 7–130, W.S. 1957, inclusive. A collective reading of these last-named sections leaves no room to

doubt that their references to informations which were authorized contemplate that such informations may only be filed by county and prosecuting attorneys. It also seems clear that the act was intended to restore to county and prosecuting attorneys the same broad powers they were formerly given by §§ 7 and 8, ch. 59, S.L. of Wyoming, 1890–1891, except that the exercise of those powers was limited to the period of 30 days before or after the first day of a term of the district court. It is reasonable, therefore, to assume this latest legislative action was taken with full knowledge and in spite of the criticism made by this court in State v. Sureties of Krohne, supra, the granting of such powers had been held by this court to be constitutional.

In view of what has been said we hold appellant's motion to quash the warrant and information because the information is said to have failed to show probable cause was properly denied; that the positively verified information in the words of the statute fulfilled requirements of both state and federal constitutions; and the arrest warrant was legally issued. Furthermore, we hold that even had appellant's arrest been illegal, the court was not thereby deprived of jurisdiction but was entitled to try appellant for the crime charged by the information.

Appellant insists the motion for change of venue, because of alleged excitement and prejudice, was erroneously denied. In support of the motion, appellant relied principally upon the fact that her associate in the business of ranching was charged with twelve felonies with attendant publicity. Affidavits in behalf of defendant and counter-affidavits in behalf of the State were submitted and a hearing upon the motion was had, following which the motion was denied. The applicable rule of law in such circumstances was announced in State v. Hambrick, 65 Wyo. 1, 20, 196 P.2d 661, 666:

"* * * Whether or not a change of venue should be granted is ordinarily within the sound discretion of the trial court. 22 C.J.S., Criminal Law, § 205, p. 323 [sic]. [See 22 C.J.S. Criminal Law § 196, p. 510]. It is only when that discretion has been abused that an appellate court can intervene * * *." See also 22 C.J.S. Criminal Law § 192, pp. 500–502.

An examination of the record fails to disclose any abuse of discretion.

Appellant next contends there was prejudicial error in receiving exhibits which represented the fruits of the crime charged, claiming no proper foundation was laid; no showing the exhibits were taken under a proper warrant or with consent; no identification of the exhibits was made; no connection with the offense charged was shown; no connection of defendant with the exhibits was shown; and the exhibits did not tend to prove the offense charged.

These objections are without merit. There was testimony that defendant made arrangement to have the exhibits stolen and brought back to defendant's ranch where the thieves would sell them to defendant; and that the exhibits were part of the stolen property. This evidence sufficiently justified their admission as exhibits.

Appellant next attacks an instruction properly cautioning the jury about testimony of two accomplices named as such in the instruction. It is not complained the caution was improper, but that as the instruction named two witnesses as accomplices but did not name a third witness shown by evidence to be an accomplice of defendant to the crime charged in the first count of the information, the omission of that third witness' name was prejudicial and reversible error. Whether, as appellant claims, the testimony of this third witness was or was not the only testimony connecting defendant with the crime charged in the first count, is not conclusive of error, but this third witness testified that knowing the exhibits had been stolen, she delivered them to defendant. This made her an accomplice to the crime charged against defendant of receiving stolen property, knowing the same to have been stolen. This

court cannot say what the jury's reaction to that testimony would have been had it been cautioned respecting this testimony of the third witness. If the instruction was necessary and proper as to any accomplice-witness, it should have been made equally applicable to all accomplice-witnesses. See Fitzgerald v. State, 85 Okl.Cr. 376, 188 P.2d 396, 408.

 It is also contended the instruction went too far in its definition of what corroborating evidence was necessary if the jury was not satisfied with the testimony of an accomplice. Appellant says the definition allowed the jury to consider any evidence which tended to connect the defendant with the crime in general, as evidence corroborating testimony of an accomplice. No fault is found with the instruction in this respect. Evidence connecting a defendant with a crime charged may be, and frequently is, so consonant and in line with the testimony of accomplices that it serves to corroborate the same.

.The verdict and judgment must be reversed as to the conviction upon the crime charged in the first count of the information. There was no error in the instruction as applied to the third count of the information.

█ A further instruction is condemned because it points out that evidence of finding stolen property at the place where accomplices have said it was hidden, did not corroborate the accomplices' testimony, unless accompanied by other independent facts and circumstances. Appellant says this conflicts with and destroys the effectiveness of the instruction last above discussed. We do not agree; in fact it seems the instruction was quite favorable to defendant.

█ Strangely, appellant also objects to the instruction by which the court directed a verdict of not guilty as to the second count of the information. This instruction tells the jury not to consider evidence of the crime charged by count two, "or any other crime," in determining guilt or innocence of the crimes charged in counts one and three, except as such evidence may tend to prove defendant's guilty knowledge that the property had been stolen or as a part of a plan or arrangement to carry out the crimes charged. Counsel's point is that this inadequately instructed the jury as to the effect of evidence given upon count two after the court had directed a verdict as to that count. We find the point not well taken. First because a verdict favorable to defendant as to count two was directed and returned, and, second, because the instruction sufficiently limited the jury to a consideration of evidence concerning count two, only as that evidence might tend to prove defendant had guilty knowledge of the stolen character of the properties described in counts one and three, or as it tended to prove there was a plan or arrangement concerning the same.

Even if, as appellant suggests, the instruction led the jury to conclude the count two property was stolen, the directed acquittal on that count rendered the instruction harmless in that regard. However, the instruction merely charged the jury could consider that evidence only insofar as it might tend to prove one element of count two, and that, in turn, the jury might consider whether such evidence tended to prove a plan or arrangement which was also the element of knowledge necessary to prove the crimes charged in counts one and three.

█ The criticism of another instruction is only that it is objectionable. Such a vague reason is insufficient to be noticed.

█ An objection made at the trial to a further instruction said it, "strongly tends to destroy the affect [sic] of knowledge on the part of Mrs. Crouse as required in other instructions of the Court;" that it injects a theory not anticipated and upon which the action was not tried; that it was inapplicable to counts one and three; and it unduly emphasizes disputed and uncorroborated testimony of an accomplice. By brief, counsel amplify these objections saying the most objectionable feature of the instruction is that it comments on the evidence; its form is objectionable because it is similar to another instruction; and that

it brings in the element of conspiracy which had been objected to during the trial on the ground of surprise and prejudice, in that it not only required defense upon the charges against defendant but also required defense of a different charge against another person. (The instruction told the jury that if it believed defendant and another person agreed to, and were jointly engaged in, an unlawful enterprise of buying and receiving stolen goods, the jury could find that the act of one was the act of the other even though both were not physically present if such acts were in furtherance of and taken in carrying out the unlawful enterprise.) No authority is submitted supporting either of these objections. In the absence of any offered precedent, we are unconvinced of their merit. The same may be said regarding objections to other instructions which need not be separately dealt with.

Counsel are also unhappy because certain instructions offered in defendant's behalf were refused, but again counsel fail to point out wherein the refusal of such instructions was improper or give any authority supporting their complaint. In summary, no error is found either in the instructions given by the court or in the refusal of the instructions offered by defendant.

▮▮▮▮ Appellant's final contention is that costs taxed against defendant were erroneously assessed in that they included mileage and per diem of jurors, amounting to $837.30; costs of motel rooms and meals for jurors amounting to $296.40; and costs of transporting witnesses, amounting to $350.26, but appellant does not dispute the $50 charged for witness fees. Under our holdings in Arnold v. State, 76 Wyo. 445, 306 P.2d 368, 375, 378, 65 A.L.R.2d 839; and State v. Alexander, 78 Wyo. 324, 324 P.2d 831, 842, certiorari denied 363 U.S. 850, 80 S.Ct. 1630, 4 L.Ed.2d 1733, the taxing of mileage and per diem of jurors was improper. Also, and for the same reasons discussed in Arnold v. State, supra, the costs of motel rooms and meals for jurors were improper. However, in line with the Arnold holding, proper costs of transporting witnesses are in much the same category as witness fees and, within the limits prescribed by statute, are legitimate costs of prosecution and should be so taxed.

The verdict and judgment of conviction rendered against defendant upon the first count and the sentence pronounced thereon are set aside and reversed, and, as to count one, the cause is remanded for new trial or such further proceedings as may be proper. The verdict and judgment of conviction rendered against defendant upon the third count and the sentence pronounced thereon is affirmed with the exception of the amount of costs taxed against the defendant. This judgment for costs is modified by deleting therefrom the costs of jurors' mileage, per diem, motel rooms, and meals, and the trial court is directed to re-examine and reassess the amounts taxed for transporting witnesses so as to insure compliance with the statutes of this State.

Affirmed in part; reversed in part; and modified in part.

GRAY, J., not participating.