George M. NIMMO, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 5057.

Supreme Court of Wyoming.

Feb. 29, 1980.

---

Terry Mackey of Urbigkit, Mackey & Whitehead, Cheyenne, for appellant.

John D. Troughton, Atty. Gen., and Bruce A. Salzburg, Asst. Atty. Gen., Cheyenne, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., Retired, was assigned, having been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5–1–106(f), W.S.1977, by order of the court entered on January 1, 1979.

THOMAS, Justice.

The novel question raised by this appeal is whether the phrase "money, funds, securities, bonds, choses in action, or other property belonging to or under control of the state" found in § 6–136, W.S.1957 (now § 6–7–305, W.S.1977) must be defined for the jury at the trial of an individual charged with violations of the statute. Other questions relate to the failure of the trial court to enforce a discovery order by declaring a mistrial or dismissing the charges; error of the trial court in permitting improper impeachment of the defendant; and the refusal of the trial court to give an instruction offered by the defendant permitting the jury to infer propriety and lawful regularity in public and business affairs and obedience of the law. We find no prejudicial error in the proceedings before the trial court, and the judgment of conviction on Counts I and II of the Indictment is affirmed.

George M. Nimmo, the Appellant, was indicted by the Wyoming State Grand Jury which charged him with three counts involving violations of § 6–136, W.S.1957. That statute provides as follows:

"Whoever, being charged, or in any manner intrusted with the collection, receipt, safe keeping, transfer or disbursement of any money, funds, securities, bonds, choses in action, or other property belonging to or under the control of the state, or belonging to or under the control of any county, school district, city or town, converts to his own use, or to the use of any other person, in any manner whatever, contrary to law; or uses, by way of investment in any kind of property, or exchanges for other funds, except as allowed by law, any portion of such money, funds, securities, bonds, choses in action, or other property, is guilty of embezzlement, and shall be imprisoned in the penitentiary not more than twenty-one (21) years."

Count I charged Nimmo with converting to his own use money, funds or property belonging to or under the control of the State of Wyoming by drawing check number 279 in the amount of $318.99 on the Wyoming Law Enforcement Academy Recreation Fund account, which it was alleged was used to pay a personal note of Nimmo at the Rock Springs National Bank. Count II charged Nimmo under the same statute and alleged that the conversion was accomplished by drawing some 89 different checks, the amounts of which totaled $4,276.59, against the same account. Count III charged conversion by drawing on the same account a single check payable to Nimmo's wife. Upon the trial the petit jury found Nimmo guilty on Count I of the Indictment, finding the amount to be the $318.99 charged; guilty on Count II of the Indictment, finding the amount to be $1,030.20, which obviously was not *all* of the amounts charged in that Count; and found him not guilty on Count III of the Indictment.

Nimmo was the Director of the Wyoming Law Enforcement Academy which was structured as a governmental division under the Wyoming State Department of Agriculture. The Wyoming Law Enforcement Academy had as its purpose the furnishing of training to police officers in the State of Wyoming. It was established originally at Laramie, Wyoming, but later was moved to Douglas, Wyoming, where it was situated in facilities located on the grounds of the Wyoming State Fair. An account was established at the Converse County Bank in Douglas, Wyoming, in the name of the Wyoming Law Enforcement Academy Recreation Fund. The sources of monies deposited in the account were varied. Some of it came from vending machines which were located at the Wyoming Law Enforcement Academy. Some of it came from police officers enrolled at the Academy in the form of contributions or payment for jackets, pins and other souvenir items reflecting their participation in the Academy program. Some deposits were made of tuition payments which some officers had paid in cash. On two occasions funds donated by the Wyoming Peace Officers Association

were deposited in this account, and in another instance a check representing the proceeds of brass sold to an ammunition firm was deposited in the account. From time to time Nimmo put money in the account in the form of checks for travel reimbursement and in some instances personal checks. Nimmo was the only person who was authorized to sign checks drawn on the account. No funds appropriated by the legislature ever were deposited in this account.

The checks drawn against the account reflect a large number of payees for various purposes. In a significant number of instances checks were drawn for cash, to pay lodging and meal bills of Nimmo. The checks which were charged in Counts I and III of the Indictment were made as alleged.

Nimmo appeals from the judgment and sentence entered upon the jury verdicts previously alluded to. We will set forth in the opinion additional facts relating to Nimmo's respective contentions of error, which he states in his brief to be as follows:

"I. THE TRIAL COURT COMMITTED ERROR OF A CONSTITUTIONAL MAGNITUDE BY FAILING TO ENFORCE ITS ORDER OF MAY 12, 1978, THUS DEPRIVING APPELLANT OF DUE PROCESS OF LAW UNDER THE WYOMING CONSTITUTION ARTICLE I SECTION 6 AND THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

"II. THE TRIAL COURT COMMITTED ERROR IN FAILING TO INSTRUCT THE JURY ON THE DEFINITION OF STATE FUNDS, WHICH ERROR REQUIRES REVERSAL.

"III. THE TRIAL COURT COMMITTED ERROR BY PERMITTING IMPROPER IMPEACHMENT OF THE APPELLANT.

"IV. THE TRIAL COURT COMMITTED ERROR IN REFUSING APPELLANT OFFERED INSTRUCTION B."

Nimmo argues vigorously that he was deprived of due process of law by the failure of the trial court to enforce its discovery order of May 12, 1978. He relies both upon Art. 1, § 6 of the Constitution of the State of Wyoming and the Fourteenth Amendment to the Constitution of the United States.

The action of the court relied upon by Nimmo is reflected in its comments from the bench because no formal order ever was entered. The State was required to furnish Nimmo a list of State witnesses three weeks prior to trial. The State also was required to furnish defendant a list of the documents to be used by the State. While the record is somewhat equivocal, the court apparently intended to require copies of exhibits to be furnished to Nimmo. These requirements were to be met three weeks prior to trial. The court indicated its reliance upon Rule 18, W.R.Cr.P., which in pertinent part provides as follows:

> "(b) *Other books, papers, documents, tangible objects or places.*—Upon motion of a defendant the court may order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the state, upon a showing of the materiality to the preparation of his defense, and that the request is reasonable."

The rule further provides in subparagraph (h):

> "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit discovery or inspection of materials not previously disclosed, grant a continuance or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances."

In essence it is Nimmo's contention that, because the State of Wyoming failed to comply with this requirement of the court relative to discovery, he was deprived of a fair trial. In his brief he referred specifically to a number of examples in the record which he contends manifest the prejudice.

This court previously has stated that the relief provided in Rule 18(h), W.R.Cr.P., must be sought by an aggrieved defendant, and it is impermissible to by-pass that relief and seek a mistrial. *Simms v. State*, Wyo., 492 P.2d 516 (1972). Substantially the same arguments to those made here were incorporated in the appeal in *Nimmo v. State*, Wyo., 603 P.2d 386 (1979). We there noted that Rule 49(a), W.R.Cr.P., relating to error which does not affect substantial rights being disregarded is applicable to such a claim. Nimmo here asserts no specific prejudice, but simply argues generally that counsel was not able to properly prepare his defense by virtue of the failure to comply with the discovery order. Therefore his conclusion is that he was generally prejudiced.

An examination of the instances recited in Nimmo's brief as examples of prejudice discloses that the court generally was reluctant to admit as exhibits any documents which had not been furnished prior to trial. In several instances, upon objection to proffered exhibits which had not been furnished prior to trial, the court refused to admit the exhibits. In other instances the court admitted documents with which Nimmo obviously was familiar even though they had not been furnished by the State prior to trial. These included such things as State checks payable to Nimmo for travel reimbursement; checks on Nimmo's personal account which he had signed; the check and related documents at the Rock Springs bank upon which Count I of the indictment was premised; travel vouchers for Nimmo; and a bank statement for the account of the Wyoming Law Enforcement Academy Recreation Fund. In other instances the court admitted over objection material which would not be subject to discovery under Rule 18(b) because it was not within the "possession, custody or control of the state."

Our deliberate examination of the record does not persuade us of any prejudice to Nimmo arising out of the asserted failure of the State to comply with the discovery order. If anything the situation was beneficial to him because his counsel

did succeed in excluding some evidence which appears to be both material and relevant. The record does disclose that the trial court in this instance was quite liberal in requiring the State to produce its evidence, we presume to make the trial more efficient and expedient. We do note, however, that Rule 18(b) uses the verb "may" which connotes an appropriate discretion in the trial court with respect to the breadth of its order. With respect to materials as to which discovery may be required at the discretion of the trial court, the trial court must be vested with discretion to relieve the State from its failure to comply with such an order. Error then would lie only in abuse of the discretion of the trial court in affording such relief to the State. (Cf., *Dodge v. State*, Wyo., 562 P.2d 303 (1977)), and in an instance such as this in which prejudice is not demonstrated no abuse of that discretion can be found.

In presenting his contention that the trial court committed error in failing to instruct the jury on the definition of State funds, Nimmo relies primarily upon authorities imposing a duty upon a trial court to instruct the jury upon the law, and particularly to instruct upon defense theories when supported by the evidence. He points to the fact that he offered an instruction for this purpose which reads as follows:

"Money, funds or property belonging to or under the control of the State of Wyoming are funds which are identified by number and title on the accounting records of the State Auditor and State Treasurer."

He also points to the fact that the State offered an instruction reading as follows:

"You are instructed that since 1921 the Statutes of the State of Wyoming have required that all moneys donated to any public institution or organization belonging to the State of Wyoming shall be deposited with the State Treasurer."

The record discloses that the State offered yet another instruction on this subject which reads as follows:

"Money received in a public officer's capacity and in the performance of his pub-

lic duty is public money within the meaning of embezzlement. The test is not the ultimate destination of the money, but the capacity in which it was received."

Nimmo also quotes from a request by the jury to which the district judge gave no affirmative response. The pertinent parts of that exchange are:

"Is there a statute that specifies what monies are the property of, or controlled by the State of Wyoming?"

The court gave this response:

"The Court feels it cannot properly answer your questions that you have submitted. Please reread the instructions as submitted to you."

From this background Nimmo argues that the definition of "funds belonging to or under the control of the state" was extremely significant to the jury in its deliberations. He contends that apparently the jury decided that some of the funds in the Wyoming Law Enforcement Academy Recreation Fund came within the statute and some did not. Nimmo argues that the verdict therefore is improper because it is apparent that the jury applied an erroneous standard. Otherwise he argues they would have found all or conversely none of the funds to be within the purview of the statute.

As we will explain below, this all-or-nothing argument of Nimmo's is not apt given the facts of this case. Conceding the duty of the court to instruct, the State points to the proposition that it is proper to refuse to give incorrect or inapplicable statements of the law. *Benson v. State*, Wyo., 571 P.2d 595 (1977); *Simms v. State*, supra. It then asserts that the instruction requested by Nimmo is not a correct statement of the law, and that the trial court further properly submitted this question to the jury as one of fact. The conclusion the State ultimately draws is that the jury found that Nimmo embezzled some of the funds, but did not embezzle others, thus suggesting that the jury treated all of the funds as State funds.

■ Because of the peculiar circumstances of this case we are disposed to agree with the State that the instruction tendered by Nimmo was not a proper statement of the law. This also is true with respect to the instructions tendered by the State on this subject. The evidence of record is subject to inferences leading to a conclusion that some of the money in this account was State funds or money properly to be considered under the control of the State, but that other amounts deposited to the account from time to time, particularly under a standard of reasonable doubt, might well not be funds belonging to or under control of the State. Those amounts which were paid by students at the Wyoming Law Enforcement Academy for jackets, pins and other mementos of their attendance at the academy might well have been considered by the jury to have been furnished to Nimmo in his personal capacity and not in his role as a person entrusted with the collection, receipt, safekeeping, transfer, or disbursement of money belonging to or under control of the State. As to any such monies, Nimmo's technical defense that he could not be convicted under this statute would be correct. We are satisfied that the jury gave him the benefit of the doubt on that score.

■ The record does disclose, however, that on August 25, 1975, $2,000 was deposited in the Wyoming Law Enforcement Academy Recreation Fund account. This was a contribution by the Wyoming Peace Officers Association for the purpose of providing matching funds to set up a training film library at the Wyoming Law Enforcement Academy. The State Treasurer testified unequivocally that that amount constituted funds of the State. His testimony was correct in law. *Hovee v. State*, Wyo., 596 P.2d 1127 (1979); *People v. Skrbek*, Colo.App., 599 P.2d 272 (1979). The jury apparently concluded it was correct in fact. The district judge could have instructed that at least that amount of the various deposits to the accounts was money belonging to the State of Wyoming. In the weeks and months after that deposit was made during which the balance in the account never rose above $2,000, various withdrawals were made by checks signed by Nimmo

which the jury might well have concluded from the evidence constituted conversions. It was during this period of time that the check charged in Count I of the Indictment was drawn, and other checks which were greater in total than the amount found to have been converted in Count II of the Indictment also were drawn. Conversely, at the time the check charged in Count III of the Indictment was drawn the balance in the account consisted of funds which the jury under a reasonable-doubt standard again must have concluded were not State funds.

Under the circumstances we believe that the trial court perhaps wisely refused the proffered instructions. Nimmo's obviously was designed to limit the fund in such a way that the jury would be forced to acquit him. The State's instructions were drawn in such a way that the jury would have been required to conclude that all of the money in the account at any time was State money or under the control of the State. Under such circumstances we find some wisdom in language of the Oklahoma Court of Criminal Appeals which said with respect to a similar situation:

" * * * The offenses defined by the statute and the classes of persons enumerated, the kinds of property covered, and the punishment provided for its unlawful taking must be gathered from the language of the statute itself. * * * "
*Wiley v. State*, Okl.Cr., 349 P.2d 30, 35–36 (1960).

In essence that is where the trial judge left the matter in this instance, and we find no error in so doing.

In his other assignment of error relating to a refusal to instruct, Nimmo complains of the failure of the trial court to give his proffered Instruction B. As tendered to the court it reads as follows:

"In the absence of evidence in the case to the contrary, you may but are not compelled to find that official duty has been regularly and properly performed; that private transactions have been fair and regular; that the ordinary course of business or employment has been followed;

that things have happened according to the ordinary course of nature and the ordinary habits of life; and that law has been obeyed. When there is evidence as to a particular matter, however, you must be guided solely by the evidence."

Nimmo asserts in his brief that this represents the law of Wyoming, citing *Crouse v. State*, Wyo., 384 P.2d 321 (1963). Our reading of *Crouse v. State*, supra, does not lead us to the same conclusion. It may be conceded that there is language in that opinion which would support the proposition that a county attorney is presumed to have properly performed his official function. Nimmo's tendered instruction goes far beyond that concept, and we believe runs afoul of the rule set forth above that the court may properly refuse an instruction contending incorrect or inapplicable statements of the law. In addition the first phrase of the proffered instruction reading "In the absence of evidence in the case to the contrary" would justify the refusal of the court to give the instruction in light of the evidence that had been presented to the jury.

Finally we turn to Nimmo's contention that the trial court permitted improper impeachment. In essence the record discloses that Nimmo testified that the last check drawn on the account was paid to the Department of Agriculture. The tenor of the proffered rebuttal was that it was not drawn with the payee as the Department of Agriculture but that George M. Nimmo was the payee. It would further appear that the payment was made to the Department of Agriculture by a cashier's check probably issued the same day. We do not agree that this was really evidence of collateral misconduct as claimed by Nimmo. We are skeptical as to whether it was successful impeachment, but we cannot find error in the action of the trial judge which in effect permitted the State on rebuttal to correct erroneous testimony of the defendant.

The other matter complained of well may have had a greater impact upon the jury. When he testified, Nimmo un-

equivocally stated that he reimbursed the account for amounts he used out of it out of his travel vouchers and that he put all of his travel vouchers into the account. While the record encompasses a great deal of dialogue about the rebuttal testimony, ultimately the court permitted the State on rebuttal to introduce only Nimmo's travel vouchers. By comparing those documents with the records of the account, the jury could discover that not all of the proceeds of the travel vouchers were deposited in the account. We conclude that the law justifies the utilization of evidence to rebut evidence submitted by a defendant, which this evidence did. *LaFleur v. State*, Wyo., 533 P.2d 309 (1975); *State v. Alexander*, 78 Wyo. 324, 324 P.2d 831 (1958), cert. den. 363 U.S. 850, 80 S.Ct. 1630, 4 L.Ed.2d 1733 (1960). The fact that such evidence also impeaches the defendant, even by demonstrating misconduct, does not, as Nimmo urges, automatically make it inadmissible. It does not constitute only evidence of collateral prior misconduct covered by Rule 608(b), W.R.E., but it goes beyond that to actually reach factual issues posed by the testimony of record. It is not, therefore, a collateral matter. Rule 608(b), W.R.E., does not control rebuttal evidence, but is limited in its application to impeachment by collateral misconduct. We find no error.

Finding no error in the proceedings before the trial court, the judgment and sentence is affirmed.

ROSE, Justice, dissenting, with whom McCLINTOCK, Justice, joins.

I dissent for the reason that, in my opinion the trial court committed reversible error in refusing—despite appellant's timely request—to instruct the jury on the definition of state funds. Appellant was charged with and convicted of violation of § 6–136,

W.S.1957 [now § 6–7–305, W.S.1977]. That statute makes it a criminal offense to embezzle public funds and is fundamentally different from other of our embezzlement or unlawful conversion statutes, e. g., § 6–7–303 and § 6–7–307, W.S.1977.

The statute under which Appellant Nimmo was charged "defines" or refers to state funds with the following language: "any money, funds, securities, bonds, choses in action, or other property belonging to or under the control of the state." Mr. Nimmo based his defense to charges of violations of the above statute on the ground, inter alia, that the funds he was accused of taking were not state funds. At his trial, both Nimmo and the State offered instructions defining state funds, but the trial court refused all offered instructions on the subject and left the jury with the recitation of the statute which included only the statutory language quoted above.

At one juncture, the jury interrupted its deliberation of the case to query the court as follows:

"Is there a statute that specifies what monies are the property of, or controlled by the State of Wyoming?"

The court responded:

"The Court feels it cannot properly answer your questions that you have submitted. Please reread the instructions as submitted to you."

This inquiry—at the very least—indicates that the jury was having some trouble identifying "state funds" within the context of this case.

A decision as to whether or not the funds involved were state funds is necessary in order to prove a material element of the statute making it unlawful to embezzle public funds.[1] If the funds involved were

---

1. Section 6–136, W.S.1957 [§ 6–7–305, W.S. 1977], provides:

"Whoever, being charged, or in any manner intrusted with the collection, receipt, safekeeping, transfer or disbursement of any money, funds, securities, bonds, choses in action, or other property belonging to or under the control of the state, or belonging to or under the control of any county, school dis-

trict, city or town, converts to his own use, or to the use of any other person, in any manner whatever, contrary to law; or uses, by way of investment in any kind of property, or exchanges for other funds, except as allowed by law, any portion of such money, funds, securities, bonds, choses in action, or other property, is guilty of embezzlement, and shall

not state funds, appellant was not guilty. It is beyond dispute that Wyoming law entitles a defendant to proper jury instructions on all of the elements of the crime for which he is standing trial. *Blakely v. State,* Wyo., 474 P.2d 127, 129–130 (1970); *State v. Hickenbottom,* 63 Wyo. 41, 178 P.2d 119, 127–132 (1947); and *Murdock v. State,* Wyo., 351 P.2d 674, 682–683 (1960). See, also, *Goodman v. State,* Wyo., 573 P.2d 400, 408–409 (1977).

The majority and the State criticize appellant's offered instruction defining state funds and cite authority for the proposition that it is not error to refuse an erroneous instruction. However, we said in *Blakely,* supra, at 474 P.2d 129:

> "We do not pretend to say Blakely's requested instruction A was necessarily free from criticism. Neither do we say instruction B was entirely correct. However, the two requests . . . were at least sufficient to apprise the court of the theory of defendant's defense and to *make it incumbent upon the court to give one or both of the instructions or to otherwise properly instruct* . . . ." (Emphasis supplied)

Thus, the issue for resolution is not whether Nimmo somehow forfeited his right to adequate jury instructions by offering an instruction that was not wholly acceptable to the trial judge, but whether presentation to the jury of the statutory language, "money, funds, securities, bonds, choses in action, or other property belonging to or under control of the state," was a satisfactory definition of state funds so as to enable the defendant to have his "defense in the case affirmatively presented to the jury." *Hickenbottom,* supra, at 178 P.2d 131.

The issue of whether particular funds belong to or are controlled by the state can be a mixed issue of fact and law. It is the province of the court, not the jury, to determine issues of law. Rule 51, W.R.C.P. (second sentence of second paragraph). (Note: Rule 51, W.R.C.P., applies in criminal cases because of Rule 31, W.R.Cr.P.).

The language quoted above from the statute, which appellant was charged with violating, is not a complete or adequate statement of the Wyoming law of what constitutes state money. For example, the Wyoming Consolidation Act, § 9–7–501, et seq., W.S.1977, was passed in order to "set forth legislative policy governing that phase of the state's fiscal procedures relating to financial funds." § 9–7–502, W.S. 1977. The act provides a statutory definition of "Fund." § 9–7–503(a)(vii), W.S. 1977. At trial, appellant called James B. Griffith as a witness. Griffith had served as the Wyoming State Treasurer and was the Wyoming State Auditor at the time. He testified that at the time of Nimmo's alleged embezzlement, the Recreation Fund was not considered a state fund under the Funds Consolidation Act.[2] Whether or not the Recreation Fund *was* a state fund within the meaning of the Funds Consolidation Act, and whether or not a fund *must be* a state fund within the meaning of the Funds Consolidation Act, in order to be a state fund within the ambit of the statute prohibiting embezzlement of public funds, involved questions of law. (We may be dealing with mixed questions of law and fact, but the trial court may not ignore the legal questions when presented with issues involving both legal and factual disputes.)

Because the "state funds" that the defendant was charged with embezzling were never defined, the appellant was deprived of a trial before a jury properly instructed on all of the elements of the charge. Therefore, this court should have reversed the trial court and remanded for a new trial.

I am satisfied that what I have said so far is sufficient to demonstrate the necessi-

---

be imprisoned in the penitentiary not more than twenty-one (21) years."

**2.** In citing this fact favorable to the appellant, I am not trying to argue that the jury was wrong. (However, I question whether a verdict by an inadequately instructed jury is entitled to any deference.) I cite this fact merely to show that the jury was left to its own devices to grapple with important questions of law.

ty for reversal of this case. However, it is appropriate to discuss the importance to the appellant of being denied instructions in this case, as well as the fallacies of the majority's position.

## THE IMPORTANCE TO THE APPELLANT OF HAVING BEEN DENIED A JURY INSTRUCTION ON THE DEFINITION OF STATE FUNDS

Appellant was charged in three counts with drawing for personal use some 91 checks against the Wyoming Law Enforcement Recreation Fund account at Converse County Bank in Douglas. The indictment alleged that the Fund consisted of monies derived from the following sources: (1) Donations from the Wyoming Peace Officers' Association; (2) contributions from individual policemen attending the Wyoming Law Enforcement Academy; (3) proceeds from the sale of soft drinks and souvenirs sold to policemen attending the Law Enforcement Academy; and (4) other unspecified sources.

The jury found appellant guilty of the charge contained in count one, involving a single check he had withdrawn for $318.99. The jury found appellant not guilty of the crime described in count three, also involving a single check. The jury found appellant guilty of the crime charged in count two, but determined that he embezzled only $1,030.20 of the more than $4,000.00 that the State had charged that he embezzled by writing some 89 checks.

The State contends that these split verdicts were due to the jury's conclusion that some of the checks were properly drawn and some were not. This interpretation loses its credibility when it is realized that the check in count three was made payable to appellant's wife, but the jury acquitted him of the count-three violation. Appellant urges that the split jury verdicts came about because the jury concluded that some

of the money in the fund was state money and some was not. Appellant's closing argument was devoted virtually exclusively to the issue of whether the money involved was state money. A closing argument based upon this premise supports appellant's position that the split jury verdicts were due to a determination that only some of the money involved was state money. Indeed, the majority accepts appellant's position in this regard. Thus, all the evidence suggests that the issue of whether the money involved was state money was central to appellant's defense and to the jury's deliberation. In this context, it is well to recall the jury's inquiry to the court on this issue.

## THE FALLACY OF THE MAJORITY'S POSITION

The majority argues that the jury, applying the reasonable-doubt standard (to a question of law!!) correctly guessed the law on what is and what is not state money. Arguendo, I will assume that the majority is correct in asserting that a certain $2,000.00 contribution to the Recreation Fund was unequivocally state money. However, this does not justify denying the appellant his right to a trial before a properly instructed jury. Article 1, Section 9, Wyoming Constitution. The public-funds-embezzlement statute provides that the conversion must be contrary to law, and the trial judge instructed the jury that this meant that "the defendant must have knowingly and intentionally with criminal intent appropriated and converted said money and property." Had the jury been properly instructed, would it have concluded that this intent element was satisfied? The Wyoming Supreme Court cannot place itself in the jury box and usurp the jury's role.[3] E. g., *Neal v. Wailes*, Wyo., 346 P.2d 132 (1959).

I would have reversed.

---

**3.** It is possible, for example, that the jury adopted an overly harsh and legally incorrect analysis of what constituted state funds and then applied the reasonable-doubt standard on intent—which included appellant's knowledge of what state funds were—to come up with its split verdict. Conceivably, had the jury applied the majority's minimal statement of what were state funds and then applied the reasonable-doubt standard on intent, they would have acquitted the appellant. The mere possibility of this scenario persuades me that the failure to properly instruct the jury cannot be deemed harmless error.