Phillip OSTROWSKI, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

Nos. 5781, 5782.

Supreme Court of Wyoming.

June 10, 1983.

James R. McCarty, Casper, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Sr. Asst. Atty. Gen., Michael L. Hubbard, and Randall T. Cox (argued), Asst. Attys. Gen., for appellee.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE and BROWN, JJ.

RAPER, Justice.

Phillip Ostrowski (appellant) was tried and found guilty by a jury in the district court of Natrona County on seven criminal counts. The seven counts were contained in two separate criminal actions[1] brought by indictment against him by the State. Both actions were joined for trial over appellant's objection. After judgment and sentence in the combined criminal actions was entered, appellant appealed separately from each action. On appeal, we have consolidated the cases. In his briefs, appellant raises a veritable barrage of issues. We consolidate and summarize them to be:

1. Whether evidence used against him at trial was legally seized either pursuant to a valid arrest or pursuant to properly issued and executed search warrants;

1. Criminal Action No. 8512:
"COUNT I
"PHILLIP OSTROWSKI, did on or about the 10th day of November, 1981, in the County of Natrona, State of Wyoming, unlawfully possess a controlled substance, with the intent to deliver, to-wit: methamphetamine, in violation of W.S.1977, §§ 35–7–1016(d)(ii) and 35–7–1031(a)(ii) [as amended] * * *.
"COUNT II
"That on or about the dates of June 21, 1981, to June 23, 1981, in the County of Natrona, State of Wyoming, the said PHILLIP OSTROWSKI did unlawfully conceal a thing of value which had been stolen, to-wit: jewelry, silverware, rifle, and a Samarai sword belonging to one John Holman, knowing the same to have been stolen and said property having the value of $100.00, and upwards, to-wit: $5,000.00, in violation of W.S.1977, § 6–7–304 * * *."
Criminal Action No. 8513:
"COUNT I
"PHILLIP OSTROWSKI, did, on or about the 2nd day of November, 1980, in the County of Natrona, State of Wyoming, unlawfully forcibly and feloniously take from the possession of another, namely, Frank Schulte, Jr., property of value belonging to My Brother's Place, when a dangerous weapon, to-wit: a pistol, was used and exhibited in the commission of the offense, by violence and putting in fear, in violation of W.S.1977, § 6–4–402 * *.

"COUNT II
"That on or about the 9th day of May, 1981, in the County of Natrona, State of Wyoming, the said PHILLIP OSTROWSKI, did unlaw-

fully conceal things of value, to-wit: rings, silverware, and buckles stolen from Merback Awards, knowing the same to have been stolen and having the value of $100.00 or upwards, to-wit: $1,500.00, in violation of W.S. 1977, § 6–7–304 * * *.
"COUNT III
"That on or about the 16th day of December, 1980, in the County of Natrona, State of Wyoming, the said PHILLIP OSTROWSKI, did unlawfully conceal things of value, to-wit: jewelry stolen from Molly Habernicht and John Major, knowing the same to have been stolen, and having the value of $100.00 or upwards, to-wit: $1,500.00, in violation of W.S.1977, § 6–7–304 * * *.
"COUNT IV
"That on or about the 10th day of November, 1981, in the County of Natrona, State of Wyoming, the said PHILLIP OSTROWSKI, did unlawfully possess, with the intent to deliver, a controlled substance, to-wit: marihuana, in violation of W.S.1977, §§ 35–7–1031(a)(ii) and 35–7–1014(d)(x) * * *.
"COUNT V
"That on or about the 17th day of June, 1981, in the County of Natrona, State of Wyoming, the said PHILLIP OSTROWSKI, did unlawfully conceal things of value, to-wit: property belonging to and having been stolen from John Roussalis, and having the value of $100.00 or upwards, and knowing the same to have been stolen, in violation of W.S.1977, § 6–7–304 * * *."

2. Whether the trial court erred in permitting the State to amend one count of an indictment at the close of evidence;

3. Whether the evidence supports a conviction for concealing stolen property;

4. Whether the trial court erred in denying appellant's motion to dismiss one count—Count V in No. 8513—of concealing stolen goods made upon the ground that it did not specify the property appellant was charged with concealing;

5. Whether the trial court erred in joining both indictments brought against appellant for trial;

6. Whether the trial court erred in refusing to instruct the jury as requested by appellant;

7. Whether appellant was denied his right to a fair trial as a result of remarks made by the prosecutor at trial;

8. Whether the trial court erred in admitting several exhibits over appellant's objection that a chain of custody had not been established; and

9. Whether the trial court erred in permitting the hearsay testimony of Rhonda Thenes over appellant's objection.

We will affirm.

From November 1980 through June 1981 the Casper Police Department had investigated a number of burglaries and robberies that had occurred in Casper, Wyoming. During the course of their investigations, the police began to piece together information that implicated appellant in one way or another in a number of those crimes. Investigation of appellant continued through the first ten months of 1981. By November 10, 1981, the police had obtained enough incriminating information against appellant that provided, in their opinion, sufficient probable cause to arrest him for certain of his criminal activities—namely, concealing stolen property. On November 10, 1981, a "pick up and hold order" for the arrest of appellant was issued and disseminated throughout the Casper Police Department. Patrolman Anderson of the Casper Police Department, acting on that order, stopped and arrested appellant in the evening of November 10.

After placing appellant under arrest, Patrolman Anderson searched appellant and a portion of the interior of his car. Those searches produced drugs and other evidence that were used at the trial to convict appellant. Immediately following appellant's arrest the police obtained a warrant to more thoroughly search appellant's car. Their search of the car turned up more incriminating evidence that was also used against him. Some time later, police obtained search warrants for various residences and appellant's safety deposit box. Searches conducted pursuant to those warrants also produced incriminating evidence used against appellant at trial.

Additional facts will be discussed where pertinent to our discussion of the various issues presented.

I

Appellant questions whether the police had probable cause to arrest him without an arrest warrant, and secondly, whether the several search warrants issued after his arrest had been issued on sufficient probable cause. We answer those questions in the affirmative.

On the question of whether the police had probable cause to arrest appellant without a warrant, he argues that Patrolman Anderson did not have sufficient personal knowledge as probable cause to arrest without a warrant; therefore, the arrest was constitutionally invalid. He also urges, in the alternative, that those investigating appellant's criminal activities were without sufficient knowledge to give them probable cause to issue the pick-up-and-hold order upon which appellant was arrested. Appellant cites *Whiteley v. Warden of Wyoming Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), in support of his position.

At the outset, we take note that at the time appellant was arrested, there was no outstanding warrant for his arrest. We, therefore, deal with the body of law surrounding warrantless arrests. Section 7–2–103, W.S.1977, provides statutory authority

for a peace officer to arrest a suspected felon without a warrant so long as he does so with probable cause to believe a felony has been committed and the suspect committed it. We have upheld that view by applying it on numerous occasions. *Lopez v. State*, Wyo., 643 P.2d 682 (1982); *Neilson v. State*, Wyo., 599 P.2d 1326 (1979), cert. denied 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980); *DeHerrera v. State*, Wyo., 589 P.2d 845 (1979).

The Fourth Amendment to the United States Constitution [2] permits an officer to arrest a suspect without a warrant if there is probable cause to believe that a crime was committed and it was committed by the suspect. *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). This court has said that in deciding whether probable cause is sufficient to justify a warrantless arrest, it must be determined that "the facts and circumstances within the peace officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a reasonably cautious or prudent man to believe that the person arrested has committed * * * an offense." *Neilson v. State*, supra at 1333 (citing *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). That view continues to reflect the United States Supreme Court's view of what is probable cause sufficient to justify an arrest. *Michigan v. DeFillippo*, supra.

In *Lopez v. State*, supra at 684, we stated that in deciding whether there was probable cause to make a warrantless arrest, the test is as stringent as that applied to magistrates in cases where an arrest warrant has issued. The facts and circumstances considered in determining probable cause for arrest need not amount to proof of guilt or even prima facie evidence of guilt but must be more than mere suspicion. *Raigosa v. State*, Wyo., 562 P.2d 1009 (1977) (citing *Brinegar v. United States*, supra). Since the constitutional standard governing probable cause is grounded upon reasonableness, our inquiry requires an objective consideration of the evidence in the record. *Neilson v. State*, supra, 599 P.2d at 1333. The standard of reasonableness must be viewed with practicality and good sense. *Vrooman v. State*, Wyo., 642 P.2d 782 (1982).

With that general review, we go to appellant's first argument. He argues that since the arresting officer, Patrolman Anderson, did not have personal knowledge of appellant's suspected involvement in criminal activity, he lacked probable cause to arrest. Patrolman Anderson acted solely on the basis of the pick-up-and-hold order issued by investigators from the Casper Police Department. Appellant relies on *Whiteley v. Warden of Wyoming Penitentiary*, supra, in that since Patrolman Anderson lacked personal knowledge, he lacked probable cause to arrest. He argues that *Whiteley* precludes probable cause being determined on the basis of the collective knowledge of law enforcement personnel. It is his position that the arresting officer must have sufficient personal knowledge of the facts to have probable cause to make a warrantless arrest. To so hold would be unrealistic as well as contrary to law.

The *Whiteley* decision stands for the proposition that, where there was no probable cause to issue an arrest warrant in the first instance, an arrest made by police solely on the knowledge that a warrant had been issued was constitutionally invalid when the arresting officer himself lacked independent probable cause to make a warrantless arrest. The Court's decision did not condemn the arresting officers for acting solely on the pick-up-and-hold order. The Court said:

> "We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable

2. Article 1, § 4 of the Wyoming Constitution is nearly identical to the Fourth Amendment and has been treated similarly in our decisions. See, *Kish v. State*, Wyo., 642 P.2d 453 (1982).

cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Whiteley v. Warden of Wyoming Penitentiary,* 401 U.S. at 568, 91 S.Ct. at 1037.

■ Arresting officers can rely on the knowledge of investigating officers and their determination of probable cause in making an arrest. *Williams v. State,* Wyo., 557 P.2d 135 (1976). In *United States v. Bernard,* 607 F.2d 1257 (9th Cir.1979), the court held an arresting officer need not, at the time he makes a warrantless arrest, possess sufficient personal knowledge of the facts to give him probable cause to make the arrest; probable cause may be determined upon the knowledge of all agencies or officers participating in the arrest. In *Bernard,* the court quoted from *United States v. Stratton,* 453 F.2d 36 (8th Cir. 1972), cert. denied 405 U.S. 1069, 92 S.Ct. 1515, 31 L.Ed.2d 800 (1972), where it was said:

"We think the knowledge of one officer is the knowledge of all and that in the operation of an investigative or police agency the collective knowledge and the available objective facts are the criteria to be used in assessing probable cause. The arresting officer himself need not possess all of the available information. * * *" 453 F.2d at 37.

■ We hold, therefore, that simply because Patrolman Anderson was possessed of only the knowledge that a pick-up-and-hold order had been issued when he arrested appellant does not invalidate the arrest if collectively the police had probable cause to arrest appellant. Our next stop is to determine if the officers investigating appellant had probable cause to arrest him.

At the hearing on a motion to suppress evidence seized incident to appellant's arrest, the State produced testimony of police investigators which demonstrated that they had probable cause to have appellant arrested on the charge of concealing stolen property. There was testimony that police investigators had been told by one of the known participants in a residential burglary that property stolen in the burglary had been delivered to appellant in return for a quantity of methamphetamine. That information was corroborated when some of the property stolen in the aforementioned burglary was recovered from an individual that claimed he was keeping it for appellant together with, what turned out to be, property stolen in other thefts. With that information, officers of the Casper Police Department did have facts from which a reasonable man could believe that, in all probability, appellant had committed the crime of receiving stolen property; they did have the necessary probable cause to arrest appellant for that crime. Appellant's arrest was constitutionally valid and the trial court quite properly refused to suppress evidence obtained pursuant to that arrest.

We next review appellant's argument that evidence obtained during four searches conducted pursuant to search warrants and used at trial should have been suppressed. Appellant argues that for various reasons the search warrants were improper and the fruits of those searches should have been suppressed. Again, the Fourth Amendment, together with Article 1, § 4, Wyoming Constitution, are at issue. The search warrants questioned were: (1) a search warrant issued to search appellant's car which was issued immediately after appellant's arrest; (2) a search warrant issued to search two boxes and two footlockers belonging to appellant and located in a residence of Kevin Gregory; (3) a search warrant issued to search appellant's residence on Sandpiper Lane one-half mile east of Mystery Bridge Road; and (4) a search warrant issued to search appellant's safety deposit box.

■ Before discussing each search warrant we will look at the applicable law. We have recently held that warrantless searches and seizures are per se unreasonable except in a few, specifically established and well-delineated exceptions. *Kish v. State,* Wyo., 642 P.2d 453 (1982). None of those exceptions are relied upon here to

justify any of the searches since warrants were obtained in all cases. It is elementary constitutional law that where a search warrant is required, it can only be issued on probable cause. Probable cause under the Wyoming Constitution must be supported by affidavit; in that regard, it differs slightly in language from the Fourth Amendment.[3] *Smith v. State,* Wyo., 557 P.2d 130 (1976). Before either a search warrant or arrest warrant can issue, the judicial officer issuing such a warrant must be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant. *Whiteley v. Warden of Wyoming Penitentiary,* supra. This court's decisions require that the affidavit in support of a warrant recite more than conclusions on the part of those seeking the warrant. It must include facts sufficient to warrant a reasonably prudent and cautious man to believe that a crime has been committed and further that there is evidence of the crime at the place to be searched. *Smith v. State,* supra. As with probable cause to arrest, mere suspicion is not sufficient ground to issue a search warrant. Id. at 133. Certainty is, of course, not required, and the evidence justifying the search need not be necessarily admissible at trial. *Croker v. State,* Wyo., 477 P.2d 122 (1970).

Because probable cause must exist at the time a warrant is issued, we must confine ourselves to that which was before the issuing magistrate at the time the warrants issued. Here we will examine the various affidavits presented in support.

With respect to the search of appellant's automobile, we note that we are not dealing with the automobile exception to the search warrant requirement since a warrant was obtained. Further, although at the time appellant was arrested certain items were seized from the passenger compartment of the car, those items were seized incident to a lawful arrest and are not at issue. See, *Lopez v. State,* supra, 643 P.2d at 685 (citing *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)). We concern ourselves with the affidavit presented in support of the police request for a search warrant to make a more thorough search of appellant's car.

■ That affidavit showed that when appellant was arrested quantities of marijuana and methamphetamine were found on his person. Field tests indicated the substances found were indeed marijuana and methamphetamine. Also, a pipe containing what officers, based upon their experience, believed to be marijuana residue was found on the floorboard of the car. Even though a police officer may not qualify to testify at trial as an expert, his professional training and expertise can be taken into account in determining probable cause to issue a search warrant. 1 LaFave, Search and Seizure § 3.2(c) at 462. The affidavit, based on the foregoing, stated his belief that additional controlled substances were concealed in appellant's car. He requested the warrant to search for "controlled substances including but not limited to methamphetamine and marihuana * * *." On this basis the warrant was issued. We hold that there were sufficient facts presented to provide probable cause to issue a warrant to search appellant's car. To suppress the fruits of that search made on the basis of insufficient probable cause would have been error against the State.

Next, appellant questions the validity of the search warrant issued to search two boxes and two footlockers belonging to him but located at the residence of Kevin Gregory. The police sought to search the four containers for certain stolen property, drugs, drug-related items, etc. A lengthy affidavit supporting the request for a warrant contained sufficient facts to allow a

---

3. The Fourth Amendment requires that: " * * * [N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article 1, § 4 of the Wyoming Constitution says basically the same thing with the exception that "affidavit" is substituted for "Oath or affirmation."

probable cause determination to be made. Appellant does not question that there was probable cause to issue the warrant; his complaint goes to the description contained in the warrant.

Both Article 1, § 4 of the Wyoming Constitution and the Fourth Amendment demand specificity in describing both the place to be searched and the items to be seized. If the warrant merely referred to the items sought as "stolen goods" as appellant implies, it would have been constitutionally inadequate as being too general. 2 LaFave, Search and Seizure § 4.6(c) at 102. However, we note a general description will suffice which includes a reference to the circumstances under which the goods were stolen, when that added fact discloses something about the condition or appearance of the goods. Id. In this case our evaluation of the record reveals appellant incorrectly represents the facts and the warrant was sufficiently specific in describing what was sought in the search. The warrant recited exactly what police had sought to search for in their affidavit. The warrant described both what was to be searched and what was sought:

> "2 12″ × 12″ white cardboard boxes turned over to the Casper Police Dept. by Kevin Gregory along with one silver colored footlocker + 1 dark colored footlocker. 1. Drugs including but not limited to methamphetamines, cocaine, marijuana, and hashish. 2. Papers, letters, and documents showing ownership of the boxes and footlocker. 3. Silver collector spoons from Wisconsin taken in the Holman burglary."

■ The warrant did not amount to simply a "general warrant to snoop" for "stolen goods" as appellant claims. It was sufficiently specific to pass constitutional muster. Further, the affidavit in support of the warrant recited more than an ample amount of facts from which an issuing magistrate could believe that a crime was being or had been committed and evidence of that crime could be found in the four containers. This warrant was constitutionally unassailable; denial of the motion to

suppress the fruits of that search was proper.

■ Appellant questions the search of his Mystery Bridge Road residence by arguing that the affidavit in support of the search warrant issued failed to specify facts showing that the items sought were in the residence on the day the search was to be conducted. The search was conducted three days after appellant's arrest, on November 13, 1981, for, among other things, ".30 cal. M–1 carbine ammunition" stolen from a residence in Casper. The affidavit stated numerous facts which would lead a reasonable and prudent person to believe that such items had been in the residence since the burglary and were still there. There were facts presented that from October until November 6, 1981, the items sought had remained at the house. The issuing magistrate certainly had before him probable cause to believe that the items sought were still there. It must be remembered that certainty that the items will be found is not required—only a reasonable belief. Whether or not the search will turn up what was sought can only be determined by the search itself. Since the record reflects that the warrant to search appellant's residence on Mystery Bridge Road was valid, the motion to suppress the fruits of the search was properly denied.

■ Appellant next raises a question concerning the search and seizure of appellant's safety deposit box at the Hilltop National Bank of Casper. His specific argument is that: "Taken on its face, the warrant permits the seizure of the box but not an examination of its contents." That argument is, on its face, without merit. The search warrant provides:

> " * * * on the premises known as Hilltop National Bank of Casper, 300 Country Club Rd., Casper, Wyoming 82602 * * * in the City of Casper, County of Natrona, State of Wyoming, there is now being concealed, certain property, to-wit:

> "Safety deposit box Number 495[;] Bank records pertaining to rental of said Safety Deposit Box[;] Money, firearms, jewelry or other items taken in the robbery of

a Mr. Rousalis [Roussalis] or the burglary of the residence of a Mr. Holman, both of Casper[.]"

It provides for more than just the seizure of the safety deposit box; it allows officers to examine the pertinent bank records and then to search the box for the items listed. There were enough facts for the magistrate to make a probable cause determination and the items sought were sufficiently described to avoid constitutional challenge of the warrant. The trial court, again, quite properly denied appellant's motion to suppress the fruits of the search.

## II

Appellant claims that the trial court erred in permitting the State to amend Count I of the indictment in Criminal Action No. 8512 at trial. Count I originally charged appellant with unlawful possession of a controlled substance, methamphetamine, with intent to deliver in violation of § 35–7–1031(a)(i), W.S.1977. As amended, appellant was charged with the same crime; however, the statutory reference was changed to § 35–7–1031(a)(ii). Section 35–7–1031(a), supra, provides in pertinent part:

"(a) Except as authorized by this act [§§ 35–7–1001 to 35–7–1055], it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:

"(i) A controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a crime and upon conviction may be imprisoned for not more than twenty (20) years, or fined not more than twenty-five thousand dollars ($25,000.00), or both;

"(ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both."

Methamphetamine is a controlled substance listed on Schedule II, § 35–7–1016(d)(ii), W.S.1977. It is not a narcotic as defined in § 35–7–1002(a)(xv), W.S.1977, which limits narcotics to include opiates and coca derivatives. Therefore, § 35–7–1031(a)(ii) was the proper statutory reference.

The State moved at trial to amend Count I prior to instruction of the jury. The record reflects the jury was unaware of any change and was instructed on only the amended charge. Rule 9, W.R.Cr.P. is particularly applicable to this issue. It provides in pertinent part:

"(a) *Nature and contents.*—All prosecutions shall be by indictment or information * * *. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. *Error in the citation or its omission or any other defect or imperfection which does not tend to prejudice any substantial right of the defendant upon the merits or to mislead the defendant to his prejudice shall not be grounds for dismissal of the indictment or information or for reversal of a conviction. * * *"* (Emphasis added.)

The record reflects that Count I of the indictment remained unchanged from when it was handed down by the grand jury with the exception that the citation to § 35–7–1031(a)(i) was changed to (a)(ii). The indictment charged in Count I:

"PHILLIP OSTROWSKI, did on or about the 10th day of November, 1981, in the County of Natrona, State of Wyoming, unlawfully possess a controlled substance, with the intent to deliver, to-wit: methamphetamine, in violation of W.S.1977, §§ 35–7–1016(d)(ii) and *35–7–1031(a)(i)* * * *." (Emphasis added.)

Appellant was always aware of the charges brought against him. He realized that the indictment was in error and he admitted as much in his brief and at trial. He knew that methamphetamine was not a narcotic contemplated in § 35–7–1031(a)(i), and, therefore, that the charge was internally inconsistent. His knowledge belies

any claim that he was prejudiced by the change.

Rule 9(a), W.R.Cr.P., implements the constitutional right of a criminal defendant to be informed of the nature of the charge(s) against him. This court has said: "[i]n a criminal indictment, it is only necessary to allege sufficiently to allow the accused to understand the charge and prepare his defense." *Gonzales v. State,* Wyo., 551 P.2d 929 (1976). Since appellant, by his own admissions, knew the nature of the charges against him and the technical imperfections therein, he could not have been misled.

As to substantive changes, the historic rule followed by courts is that an indictment may not be amended. 1 Wright, Federal Practice and Procedure: Criminal 2d § 127 at 415 (1982). Rule 9 does not address substantive changes. Here the amendment was not substantive; it simply corrected an imperfection that was well known to appellant—an error in citation. Appellant was not prejudiced by the change; therefore, there was no error.

### III

Appellant next asserts that the evidence presented at trial was not sufficient to support a conviction in one of the several counts of concealing stolen property. Appellant refers us to Count II in Criminal Action No. 8512, see fn. 1, which charges:

"* * * That on or about the dates of June 21, 1981, to June 23, 1981, in the County of Natrona, State of Wyoming, the said PHILLIP OSTROWSKI did unlawfully conceal a thing of value which had been stolen, to-wit: jewelry, silverware, rifle, and a Samarai sword belonging to one John Holman, knowing the same to have been stolen and said property having the value of $100.00, and upwards, to-wit: $5,000.00, in violation of W.S.1977, § 6–7–304 * * *."

Section 6–7–304, W.S.1977, which appellant is charged with violating provides:

"Whoever buys, receives, conceals or aids in the concealment of anything of value, which has been stolen, embezzled or obtained by false pretense, knowing the same to have been stolen, embezzled or obtained by false pretense, shall, if the goods are of the value of one hundred dollars ($100.00) or upwards, suffer the punishment prescribed for grand larceny, and if the goods are worth less than one hundred dollars ($100.00), shall suffer the punishment prescribed for petit larceny."

Appellant argues that the State failed to prove that appellant knew the items in question were stolen and, therefore, his conviction on that count must be overturned. We disagree.

The State's burden on this charge was to prove beyond a reasonable doubt the following elements: (1) the receipt (2) of a thing of value which was stolen (3) knowing it to have been stolen. *Russell v. State,* Wyo., 583 P.2d 690 (1978). Our task in reviewing a sufficiency of the evidence question such as this is to determine if the State met its burden. In so doing we employ a standard of review of long standing most recently set out in *Brown v. State,* Wyo., 661 P.2d 1024 (1983). We there quoted from our decision in *Harries v. State,* Wyo., 650 P.2d 273, 274 (1982):

"' "The oft-repeated rule by which we test the sufficiency of evidence on appeal of a criminal matter is that we examine and accept as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith, and we give to the evidence of the prosecution every favorable inference which may reasonably and fairly be drawn therefrom. Stated another way—it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. [Citations.]" * * ' "

The transcript in this case reveals that appellant received property that had been stolen in the burglary of the Holman residence. Appellant does not contest the

**482**

State's proof of those two elements of the crime. Nor does he contest the value requirement since it was proved at trial that the property was valued at over $100. He only argues that the State failed to prove that he knew the property was stolen.

At trial the State presented the testimony of one of the Holman burglars that appellant had received the property stolen from the Holmans in return for a quantity of methamphetamine. Additionally, the State presented Kevin Gregory's testimony that appellant had indeed been in possession of the property stolen in the Holman burglary. Finally, the State presented Kevin Gregory's testimony that appellant considered himself to be a fence and that he had a "significant fence operation * * * going on." A fence, as used here and defined in Black's Law Dictionary (5th Ed. 1979) is "[a] colloquial characterization of a receiver of stolen property."

 Keeping in mind that each element of a crime may be established by either direct or circumstantial evidence, *Hopkinson v. State,* Wyo., 632 P.2d 79, 148 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982) (*Hopkinson I*), we hold against appellant on this issue. The evidence presented by the State was sufficient for the jury to conclude beyond a reasonable doubt that appellant had received stolen property with knowledge it was stolen. We so find after applying the standard set by *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, reh. denied 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), applied in *Hopkinson v. State,* Wyo., 664 P.2d 43 (1983) (*Hopkinson II*). We do not decide whether we believe the evidence established guilt beyond a reasonable doubt, but we view the evidence in the light most favorable to the prosecution to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**IV**

Appellant next would have us assign as error the trial court's denial of his motion to dismiss made on the ground that Count V in Criminal Action No. 8513 failed to specify the property he was charged with concealing. Count V charged:

"* * * That on or about the 17th day of June, 1981, in the County of Natrona, State of Wyoming, the said PHILLIP OSTROWSKI, did unlawfully conceal things of value, to-wit: property belonging to and having been stolen from John Roussalis, and having the value of $100.00 or upwards, and knowing the same to have been stolen, in violation of W.S.1977, § 6–7–304 * * *."

Appellant would have us declare that an itemized list of property involved is required in a criminal charge. That is unnecessary. A bill of particulars is available to elicit that information if an accused needs it.

As noted in our discussion of appellant's second issue, Rule 9(a), W.R.Cr.P., governs the nature and contents of criminal indictments. Again, that rule implements the constitutional right of a criminal defendant to be informed of the nature of the charge(s) against him.[4] Rule 9, W.R.Cr.P., in pertinent part, provides:

"(a) *Nature and contents.*—All prosecutions shall be by indictment or information and carried on in the name and by the authority of the state of Wyoming, and shall conclude 'against the peace and dignity of the state of Wyoming'. The indictment or information shall . be a plain, concise and definite written statement of the essential facts constituting the offense charged and it shall be signed by the prosecuting attorney. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown, or that he commit-

---

4. The Sixth Amendment is the relevant constitutional provision. It provides in part:
 "In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of

the nature and cause of the accusation * *."

ted it by one (1) or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. * * *

* * * * * *

"(d) *Bill of particulars.*—The court for cause may direct the filing of a bill of particulars. A motion for bill of particulars may be made only within ten (10) days after arraignment or at such other time before or after arraignment as may be prescribed by rule or order. The bill of particulars may be amended at any time subject to such conditions as justice requires."

Appellant cites this court's decision in *Crouse v. State,* Wyo., 384 P.2d 321 (1963) in support of his argument. That case, of course, does not support appellant's contention that an itemized list of property is required in the indictment to comport with Rule 9's requirements. The decision in *Crouse* dealt with an information described in § 7–122, W.S.1957; it was decided prior to the adoption of the Wyoming Rules of Criminal Procedure. Nonetheless, in dicta, the court set out the view that an indictment must be sufficiently specific to identify the offense with which the accused is charged. The indictment need only provide an accused with enough information to understand the charges against him and prepare his defense. Id. at 325.

In *Hovee v. State,* Wyo., 596 P.2d 1127, 1131 (1979), this court, citing *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) said: "an indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense * * *." Here the indictment was sufficient in that it fairly apprised appellant of the charge being brought against him.

If, as appellant claims, he needed more information to prepare his defense, a bill of particulars would have gone a long way in satisfying that need. Rule 9(d), W.R.Cr.P., supra, provides for the means for obtaining a bill of particulars. As this court stated in *Booth v. State,* Wyo., 517 P.2d 1034 (1974), a bill of particulars is designed to supply a criminal defendant with information about the details of the charge against him if necessary to further prepare his defense.

The record reveals that appellant did, in fact, make a motion for a bill of particulars on this charge. He, however, failed to pursue the motion even when confronted by the trial court with his failure to do so. The State argues that appellant's failure to pursue his request for a bill of particulars disposes of this issue. That view is not quite correct. If an indictment is insufficient, it must be dismissed; an insufficient indictment cannot be saved by a bill of particulars. *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); see also, 1 Wright, Federal Practice and Procedure 2d § 125 at 387 and § 129 at 434. The issue is whether the indictment is sufficient. We have determined it was. There is no error on that score.

V

Appellant next argues that the trial court erred in consolidating the two criminal actions brought against him—Nos. 8512 and 8513, fn. 1 supra—for trial. At the heart of this issue are Rules 11, 12, and 13, W.R.Cr.P. Rule 11, W.R.Cr.P., provides in pertinent part:

"(a) *Joinder of offenses.*—Two (2) or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction, or on two (2) or more acts or transactions connected together or constituting part of a common scheme or plan."

Rule 12, W.R.Cr.P., provides:

"The court may order two (2) or more indictments or informations or both to be

tried together if the offenses, and the defendants, if there is more than one (1), could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information."

Rule 13, W.R.Cr.P., provides:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance, the court may order the prosecuting attorney to deliver to the court for inspection *in camera* any statements or confessions made by the defendant which the state intends to introduce in evidence at the trial."

In this issue appellant raises two questions: (1) whether the charges in each separate indictment should have been joined under Rule 11, W.R.Cr.P., and, if so (2) whether the two indictments should have been tried together. Appellant properly preserved both issues for review. He seeks relief from the trial court's denial of his motion for relief from prejudicial joinder and for separate trial made pursuant to Rule 13, W.R.Cr.P. Appellant argues that as a result of both the joinder of offenses and the consolidation for trial of the two indictments he was prejudiced. We are constrained to take a different view.

■■■■ Before proceeding we notice the law applicable to the resolution of this issue. Rules 11 and 12, W.R.Cr.P., permit both joinder of offenses and trial together of separate indictments. The language in both rules is permissive; thus a trial court's refusal to grant relief under either is discretionary, *Dycus v. State,* Wyo., 529 P.2d 979 (1974), and will be reviewed under our traditional abuse-of-discretion standards. The trial court has no discretion, however, to include in a single indictment offenses or defendants not permitted by Rule 11 to be joined. Such an act would be termed "misjoinder." Trial courts have no discretion to deny severance on timely motion where misjoinder has occurred. *United States v. Hedman,* 630 F.2d 1184 (7th Cir.1980). See also, 1 Wright, Federal Practice and Procedure 2d § 145 at 527.

If joinder was proper under Rule 11, then Rule 13 is activated to provide a means for relief to avoid prejudice. The grant or denial of severance under Rule 13 being within the sound discretion of the trial court, upon review, absent a clear abuse of discretion, we will not disturb the trial court's decision. *Tabor v. State,* Wyo., 616 P.2d 1282 (1980).

Since Rule 12 conditions when more than one indictment against a defendant may be tried together on the circumstances in Rule 11, discussion of Rule 11 is pertinent to both questions raised by appellant. Rule 11 allows joinder of offenses on any one of three separate bases: (1) if the offenses charged are based on the same act or transaction; (2) if the offenses charged are based on two or more acts that are connected together or constituting a common scheme or plan; and (3) if the offenses charged are of the same or similar character. Rule 11, W.R.Cr.P., and see, 1 Wright, Federal Practice and Procedure 2d § 143 (discussing an identical Rule 8(a), F.R.Cr.P.).

Referring to the various charges brought against appellant, fn. 1, it is obvious that we are not dealing with offenses arising from the same act or transaction. Arguably, too, the offenses charged do not satisfy the second basis for joinder because they are not closely connected nor of such a nature to constitute a common scheme or plan. We, therefore, turn, as did the trial court, to a consideration of the third basis to determine if joinder was permissible. Did the trial court properly hold that the offenses were of the same or similar character?

In making such a determination the most important consideration seems to be whether evidence relating to the similar offenses charged would be admissible in the separate trial of each offense. *Dobbins v. State,*

Wyo., 483 P.2d 255 (1971). If evidence admissible in a joint trial could be admissible in separate trials on each charge, a defendant could not be prejudiced by the joinder. *Hopkinson v. State,* supra, 632 P.2d at 101.

Our review of the record leads us to the conclusion that the evidence presented in this consolidated case could have been presented at separate trials on each charge. Although we realize that trial courts have a great deal of discretion in ruling on the admissibility of evidence, *Weathers v. State,* Wyo., 652 P.2d 970, 972 (1982), Rules 104 and 403, W.R.E., we must look to determine what the trial court could have done acting within the scope of its discretion. At the very least, the trial court could have properly admitted the evidence presented at separate trials on each charge using Rule 404(b), W.R.E.,[5] and *Tabor v. State,* supra at 1284, 1285. Joinder of the offenses in one indictment would thus have been proper, and it was also proper to try both indictments together.

With that in mind we must determine whether the trial court abused its discretion in refusing to grant appellant's Rule 13 motions alleging prejudice. The only allegation appellant raises worthy of consideration is that he was prejudiced by being denied the ability to testify on his own behalf on some charges without being subject to cross-examination on all. This court dealt somewhat inconclusively with this issue in *Dobbins v. State,* supra. There the court indicated that defendant had failed to raise the issue before the trial court and then on appeal failed to identify the charges he chose to testify on. On those facts, this court declared that more than the mere assertion of such a claim was necessary for the court to act upon the defendant's claims.

In the case before us, appellant raised the issue in the trial court. In an affidavit accompanying his Rule 13 motion, he indicated his desire to testify on his own behalf

concerning some but not all of the charges. No explanation was given for the request other than the bare assertion that he would, without obtaining the relief he sought, be prejudiced at trial.

■ Again we note that on this issue our review is founded on an abuse-of-discretion standard. To hold that the trial court abused its discretion, more than a bare assertion that prejudice will occur as a result of the trial court's failure to grant relief is required. At the very least, appellant should have presented sufficient information concerning the nature of the testimony he wished to give on some counts and his reasons for remaining silent on the others to satisfy the court that his claim of prejudice is genuine. To have done so would have allowed the trial court to independently evaluate the possible prejudice and then weigh any such prejudice against the interests favoring joinder. *United States v. Werner,* 620 F.2d 922 (2d Cir.1980); *United States v. Bronco,* 597 F.2d 1300 (9th Cir. 1979); *United States v. Jamar,* 561 F.2d 1103, n. 9 (4th Cir.1977); *Baker v. United States,* 401 F.2d 958, 976–977 (D.C.Cir.1968).

■ To hold that the trial court erred in failing to grant appellant relief under Rule 13 on his bare assertion of possible prejudice would greatly weaken, if not destroy, the effective and beneficial remedies provided for in Rules 11 and 12. Trial courts, when presented with sufficient information on an in camera examination, are quite capable of exercising sound discretion through the mechanism of Rule 13, W.R. Cr.P., and relieving either party in a criminal action of the burden of prejudicial joinder. The State and the judicial system are entitled to consideration as well as the accused. A trial judge must be given a fair chance to exercise discretion before we can consider possible error on the basis claimed by appellant.

**5.** Rule 404(b), W.R.E., provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *It may, however, be*

*admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."* (Emphasis added.)

## VI

In this issue we have combined several specific questions concerning the trial court's instructions to the jury; they are: (1) whether the trial court erred in refusing to give appellant's offered instructions; (2) whether the trial court erred in presenting its cautionary instruction concerning accomplice testimony rather than appellant's; and (3) whether the trial court incorrectly instructed the jury with regard to the offense charged in Count I of Action No. 8513, fn. 1 supra.

A preliminary view of the law will help. It is a well-settled rule that the jury must be instructed on the law in language it can understand. *Britton v. State,* Wyo., 643 P.2d 935 (1982); *Heinrich v. State,* Wyo., 638 P.2d 641 (1981). The general rule in reviewing questions involving instructions is that the trial court may refuse to give proposed instructions which are correct so long as the principles embodied in the requested instructions are covered by other instructions given. *Britton v. State,* supra; *Jeschke v. State,* Wyo., 642 P.2d 1298 (1982).

Appellant represents that the court erred in refusing to give, as a group, appellant's sixteen offered instructions. We have reviewed both the instructions given by the court and those offered by appellant. Without setting out both sets of instructions, we find no error occurred in instructing the jury. The jury was adequately instructed on the applicable law. As to the specific allegations of error raised by appellant, we will proceed to discuss them in more detail. We refuse to go further in discussing a general allegation that it was error to refuse appellant's sixteen tendered instructions. *Alcala v. State,* Wyo., 487 P.2d 448, cert. denied 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466 (1971).

Appellant argues that the trial court erred in refusing his instruction concerning the testimony of three alleged accomplices to some of his criminal undertakings. His proposed instruction stated:

"YOU ARE INSTRUCTED that the testimony of Terry Lawson, Rhonda Thenes and Viola Jean Burd should be received by you with great caution and you should not convict the Defendant of any crimes connected with their testimony upon the basis of their testimony alone, unless it is corroborated by other credible evidence tending to show that the Defendant is guilty of the crime charged."

The pertinent paragraphs of the instructions given by the trial court are as follows:

"The jury is the sole judge of the credibility of the witnesses, and of the weight to be given their testimony. You should take into consideration their demeanor upon the witness stand, their apparent intelligence or lack of intelligence, their means of knowlege [sic] of the facts testified to, the interest, if any, which any witness may have in the outcome of this trial, the prejudice or motives, or feelings of revenge, if any, which have been shown by the evidence. In so doing, you may take into consideration all of the facts and circumstances in the case and give such weight as you think the same are entitled to, in the light of your experience and knowledge of human affairs."

"If you believe from the evidence in this case that any witness willfully and corruptly swore falsely to any material fact in this case, then you are at liberty to disregard all or any part of that testimony, except insofar as the same has been corroborated by other and credible evidence, and the facts and circumstances proven during the trial."

"YOU ARE INSTRUCTED that the fact that a witness has been convicted of a felony, if such be a fact, may be considered by you for only one purpose, namely, in judging the credibility of that witness. The fact of such a conviction does not necessarily destroy or impair the witness' credibility, and it does not raise a presumption that the witness has testified falsely. It is simply one of the circumstances that you are to take into consideration in weighing the testimony of such a witness."

"An accomplice is one who unites with another person in the commission of a

crime, voluntarily and with common intent (and who could be charged with the same offense as the defendant, either as principal or as accessory before the fact). An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of an accomplice alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilty, even though not corroborated or supported by other evidence. However, the jury should keep in mind that such testimony is always to be received with caution and weighed with great care.

"You should never convict a defendant upon the unsupported testimony of an alleged accomplice, unless you believe that unsupported testimony beyond a reasonable doubt."

■ We find that no error can be assigned on this point. The trial court's instructions sufficiently cautioned the jury with regard to the credibility of the witnesses without singling out appellant's accomplices as such. Further, as this court noted in *Phillips v. State*, Wyo., 553 P.2d 1037 (1976), the law in Wyoming is that a conviction may be had upon the uncorroborated testimony of an accomplice. Therefore, appellant's proposed instruction incorrectly states the law. The trial court's instructions correctly stated the law on the subject of the credibility of alleged accomplices.

■ Appellant also complains that the trial court incorrectly instructed the jury concerning Count I in Criminal Action No. 8513, fn. 1 supra. In that count, appellant was charged with acting as an accessory before the fact, § 6–1–114, W.S.1977, in the commission of aggravated robbery in violation of § 6–4–402, W.S.1977. It was not necessary to charge appellant with more than the violation of the principal offense where the State proceeded with appellant's knowledge on an accessory-before-the-fact theory. *Hawkes v. State,* Wyo., 626 P.2d 1041 (1981).

In instructing the jury on this crime, the trial court set out the elements of the crime

of aggravated robbery. Appellant does not contend that the elements of the crime were incorrectly instructed. He takes exception to the following language in that instruction:

"YOU ARE INSTRUCTED that concerning the charge pertaining to armed robbery the State must prove each of the following elements beyond a reasonable doubt:

"1. That *someone* took property of value belonging to My Brother's Place from Frank Schulte, Jr." (Emphasis added.)

Appellant argues that the instruction, by its use of the word "someone," would allow anyone to be found guilty of the crime.

■ Appellant's argument is mere sophistry. In reviewing instructions we are reminded that the instructions given by the trial court must be examined in their entirety. *Scheikofsky v. State,* Wyo., 636 P.2d 1107 (1981). Here, in addition to the instruction on aggravated robbery, the trial court instructed the jury as to what an accessory before the fact was. The trial court then proceeded to instruct on the elements of the crime appellant was charged with as follows:

"The necessary elements of the crime of accessory before the fact to the felony charged are:

"1. The crime occurred within the County of Natrona, State of Wyoming, on or about the date of November 2, 1980.

"2. That armed robbery was committed by someone as a principal; and

"3. The defendant knowingly and willfully counseled, encouraged, hired, commanded, or otherwise procured the commission of the felony, the elements of which were set forth in another instruction.

"If you find from your consideration of all of the evidence that each of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

"If, on the other hand, you find from your consideration of all of the evidence that each of these elements has been

proved beyond a reasonable doubt, then you should find the defendant guilty."

Appellant was not charged with actually committing the robbery, he was charged as an accessory before the fact in the commission of the robbery. Appellant was well aware of that fact and does not question the State's theory of the case here. Appellant merely raises a meritless issue that even a cursory review of the record discounts. Needless to say, there was no error.

## VII

Appellant questions the propriety of certain comments made by the prosecutor during voir dire and in his opening statement. Specifically, appellant complains of the State's use of the words "fence" and "narcotics" in referring to his criminal activities. He also complains that the State, during voir dire, referred to him as a criminal. He therefore would have us rule that the trial court committed reversible error in overruling his objection to the prosecutor's use of the aforementioned words and denying his motions for mistrial. He cites as authority for his proposition this court's decision in *Dorador v. State,* Wyo., 520 P.2d 230 (1974), and *Kwallek v. State,* Wyo., 596 P.2d 1372 (1979).

Neither of those cases is on point because, in both, the complained of misconduct dealt with the prosecution's introduction of the defendant's past conduct into evidence. In neither case was the complained of evidence relevant to the case being tried. This court's decision in both cases was founded on the principles announced in Rule 404(a), W.R.E. That rule prohibits the use of evidence of an accused's character or trait of his character for the purpose of proving he acted in conformity therewith on the occasion in question except where the accused has first placed his character in issue. *Kwallek v. State,* supra, 596 P.2d at 1377.

In this case we must deal with the prosecutor's comments before the presentation of evidence had begun. No question is raised on the admissibility of evidence. We will review the comments made by the prosecu-tor during voir dire and his opening statement and then apply the applicable law.

■■ Rule 25(a), W.R.Cr.P., deals with voir dire. It states in pertinent part:

"(a) *Examination of jurors.*—The parties, or their attorneys, may conduct the examination of prospective jurors, but such examination shall be under the supervision and control of the court. * * * "

The purpose of voir dire is to inquire of jurors to determine whether they have prejudices and biases which would interfere with their ability to decide the case fairly and impartially. *Hopkinson v. State,* supra, 632 P.2d at 111.

" * * * While it is not possible, or at least not practical, to enunciate rigid rules concerning the latitude which should be allowed counsel when interrogating prospective jurors, there is universal agreement that the matter is within the sound discretion of the trial court. * * * " *Gerard v. State,* Wyo., 511 P.2d 99, 100 (1973).

This court recently, in *Hopkinson I,* had occasion to review a question concerning a prosecutor's opening statement. There, quoting from Chief Justice Burger's concurring opinion in *United States v. Dinitz,* 424 U.S. 600, 612, 96 S.Ct. 1075, 1082, 47 L.Ed.2d 267, 276–277 (1976), it was said concerning the purpose and scope of an opening statement:

" 'An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument. To make statements which will not or cannot be supported by proof is, if it relates to significant elements of the case, professional misconduct. Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intend-

ed to influence the jury in reaching a verdict.' * * * " 632 P.2d at 112.

In *Hopkinson I* it was held that ruling on objections made to comments in opening statements was left to the sound discretion of the trial court. In *Hopkinson I* the misstatements made in the prosecutor's opening statement were held not to be intentional, malicious or prejudicial; therefore, the trial court's actions were upheld. As explained there, this court puts great stock in the trial court's decisions on such matters because the trial court is in the best position to guage the prejudice, if any, that may result from improper statements. Id. at 119. That logic is equally applicable to comments made during voir dire.

▇ Before trial appellant had sought to limit the prosecution's use of the term complained of, and the court refused saying he would rule on objections when they arose. Here the prosecutor, during voir dire, used the term "fence" when he asked the jury if they knew what a "fence" was. The plain and simple fact of the matter is that the State's case, in a large part, was aimed at proving that appellant was indeed a "fence." There was ample evidence that appellant, in his own words, considered himself to be a fence. We refuse to assign error for the prosecutor's use of the word "fence" during voir dire. It would be unthinkable to say reversible error resulted from the use of a term which the proof established that it accurately described the activities appellant was alleged to have been criminally involved with.

During voir dire, the prosecutor in effect asked if anyone on the jury could honestly find fault with the State for giving lenient treatment to a witness "in exchange for his testimony against another criminal." Appellant objected to his being, in essence, characterized as a criminal and moved for a mistrial. The trial court sustained the objection to the comment and denied the motion for a mistrial. We are unable to find fault with the trial court's actions where it was in the best position to guage the prejudicial effect, if any, of the comment. The prosecutor's ill-considered characterization

of appellant was improper as the trial court pointedly indicated; but as a single isolated occurrence we will, without a clear showing of prejudice, let the trial court's decision stand.

In his opening statement, the prosecutor stated:

> "The evidence will show * * * that the defendant in the street language was, as he admitted himself, a fence. In fact he bragged about being a significant fence, and as a fence, the defendant was also a dealer of narcotics, the evidence will show that in return for the stolen merchandise * * * the defendant delivered to the burglars and robbers narcotics."

During the presentation of its case the State then proceeded to present the evidence as advertised in its opening statement, with one exception. The State in the technical sense did not prove appellant dealt in narcotics as defined in § 35–7–1002(a)(xv), W.S.1977. The State did prove that controlled substances, incorrectly alluded to as narcotics, were distributed by appellant. As we pointed out earlier in this opinion, appellant was well aware of the technical defect, thus was not prejudiced, and the jury was instructed on the proper drug-related offense. In common parlance a narcotic is a drug. Webster.

We hold that the prosecutor's statements were, in general, completely proper as briefly detailing the evidence he intended to present. The technical defect in the incorrect reference to narcotics was not of such nature to create reversible error. The trial court obviously felt that appellant was not prejudiced by the technical defect, and we are unable to conclude that it abused its discretion in reaching that conclusion.

### VIII

▇ Appellant next urges us to reverse his conviction on the ground that a number of items were improperly received in evidence. His only cogent argument to which he cites supporting authority deals with the admission into evidence of several of the numerous controlled substance exhibits.

We refuse to deal with appellant's remaining claims with regard to the admissibility of evidence because, with respect to those, he fails to make a cogent argument supported by pertinent authority. This court need not consider claimed error unsupported by cogent argument and authority. *Britton v. State,* supra, 643 P.2d at 940.

Appellant claims that the State failed to adequately demonstrate a continuous chain of custody necessary to establish proper foundation for the admission of several small bags of marijuana seized from a footlocker belonging to appellant. He correctly cites *Jackson v. State,* Wyo., 522 P.2d 1356 (1974) as authority for such a foundation requirement. Since then, in *LeBeau v. State,* Wyo., 589 P.2d 1292 (1979), and *Escobedo v. State,* Wyo., 580 P.2d 655 (1978), we have recognized the requirement that proper foundation for the admission into evidence of controlled substances requires that a chain of custody be established. In both *LeBeau* and *Escobedo,* this court also recognized that more than conjecture or speculation that the evidence was altered or tampered with is required before exclusion is dictated.

Here no evidence was presented nor even an allegation made which would indicate even a suspicion on the part of appellant that the evidence was tampered with or altered. Beyond that, however, and contrary to appellant's representations, the record abundantly reveals that the State established a chain of custody with regard to these few bags of marijuana. Appellant's argument is without merit. There is no error here.

## IX

In his final issue, appellant complains that the only evidence connecting him with the Roussalis theft and the charges contained in Count V in Criminal Action No. 8513, fn. 1 supra, was contained in improperly received hearsay testimony. Appellant claims that: (1) the pertinent testimony of Rhonda Thenes implicating him in the Roussalis theft was all hearsay; (2) the trial court erred in receiving the alleged hearsay testimony over his timely objection; and (3) that he was thereby prejudiced because no other evidence connecting him with the crime was produced.

The record speaks to the contrary. In it we find that there was evidence produced at trial connecting appellant with the Roussalis theft other than that complained of by appellant. Items stolen from the Roussalis home, including coin collections, guns and ammunition, were found in appellant's possession. There was the testimony, mentioned earlier, that appellant considered himself to be a fence who ran a substantial fencing operation. Well over $200,000 in money and goods was stolen from the Roussalis home. Appellant, though unemployed and without visible means of support, was shown to have large quantities of cash immediately after the theft.

Further, Rhonda Thenes, an accomplice in stealing the property, testified that appellant was a known associate of the thieves and was in their company both immediately before and immediately after the crime. She knew that appellant was present when the heist was planned. She testified also that she had watched as some of the property stolen from the Roussalis home was delivered to appellant. None of the foregoing was objected to.

In short, there was more than adequate evidence presented which implicated appellant. The record revealed evidence which was more than sufficient to convict appellant on the charge contained in Count V. We have laid bare appellant's first and third contentions. There was far more evidence presented than what he claims with which he could be found guilty on Count V in Action No. 8513. The record and appellant's assertions are in conflict. We accept the record.

Where no actual prejudice is claimed or can be shown, we will not reverse even where it is shown that evidence was improperly received. *Murdock v. State,* Wyo., 351 P.2d 674 (1960). See also, *Harvey v. State,* Wyo., 596 P.2d 1386 (1979); Rule 49(a), W.R.Cr.P. Appellant's asser-

tions are unbuttressed by fact, so we need go no further. A review of the hearsay claim would be of no value in the absence of prejudice.

Affirmed.